W. W. WISE et al., plaintiffs-appellees, v. BOARD OF SUPERVISORS OF WEBSTER COUNTY et al., defendants-appellees; FRANK E. CASTENSON et al., intervenors-appellants.

No. 47865.

(Reported in 48 N.W.2d 247)

June 5, 1951.

John H. Mitchell, of Fort Dodge, for intervenors-appellants.

Rider & Bastian, of Fort Dodge, for plaintiffs-appellees.

Loth & Melton, of Fort Dodge, for defendants-appellees.

OLIVER, J.—Drainage District No. 2, Webster County, was established in 1904 and was cleaned out in 1920. In 1945 some owners of farm lands in the district petitioned the Board of Supervisors to repair the ditch. The engineer appointed by the Board to make a preliminary survey reported the ditch and drains were silted and were obstructed by trees and shrubbery.

He recommended the ditch be cleaned out and repaired to restore it to its original efficiency. Later, other landowners, including a majority of the intervenors, objected to the proposed cleanout and repair. They asserted the cost at that time would be almost prohibitive and that postponement for two or three years would benefit all landowners in the district. March 29, 1947, the Board dismissed the petition for the repair of the ditch.

August 24, 1948, upon petition by plaintiffs, the Board adopted a resolution that the drainage system was not operating properly and it was necessary to clean out the ditch. Another engineer appointed to make a survey reported the ditch was badly silted for most of its length, tile outlets in the upper part were submerged and, except near the lower end, the ditch was overgrown with trees and brush, so that the rate of flow was greatly retarded and the rate of silting increased. The report stated it was advisable and practicable to return the ditch to its original state of efficiency and submitted plans, specifications, etc. for the proposed work. The Board accepted and approved this report, authorized the repair, fixed December 7 for the letting of bids and gave notice accordingly. Certain landowners filed objections to the proposed work. December 21, 1948, the Board adopted a resolution that all proceedings pertaining to the proposed cleanout be discontinued and abandoned. Shortly thereafter plaintiffs instituted this action in mandamus against the Board of Supervisors and its members to compel them to cause the ditch and drain to be repaired and restored to its original state of efficiency as required by statute.

Defendants' answer admitted most of the factual allegations of plaintiffs' petition but denied they had refused to comply with the drainage laws of Iowa. As to the 1945 petition to repair it stated:

"Thereafter defendant Board instituted proceedings for the repair but the big majority of the landowners protested the need of any repair and defendants after numerous hearings, acting in conformity with the wishes of the majority of the landowners in the district, decided not to do any final repair work at that time, said final action being taken on March 29, 1947." As to the 1948 proceeding the answer stated: "This time, as in 1947, the great

majority of the landowners objected to any expense in the district and the Board in response to their wishes decided not to go ahead with the requested repair."

The petition of intervention alleged intervenors claimed adversely to both plaintiffs and defendants. It resisted the granting of the relief sought by plaintiffs. Trial resulted in judgment for plaintiffs. Intervenors have appealed. No appeal was taken by defendants.

I. Section 455.135, Code of Iowa 1946, I. C. A. (in effect until after the appeal to this court), provides the improvement in any drainage district shall be under the supervision of the Board of Supervisors "and it shall be the duty of the board to keep the same in repair * * *." This is a positive mandate to keep the drainage system in such condition that it will function properly and perform the service for which it was intended. Haugen v. Humboldt-Kossuth Joint Drainage Dist., 231 Iowa 288, 306, 307, 1 N.W.2d 242, and citations.

Likewise, Code section 455.148 provides the Board shall cause to be removed from the ditches, drains and laterals any obstructions which interfere with the flow of the water, including trees, hedges, shrubbery and the roots thereof.

The findings of the trial court recite the evidence shows conclusively that silt, debris, trees, shrubs and mounds of earth have accumulated in and along the open drain and have obstructed and retarded the flow of water to such an extent as to seriously impair the drainage for the lands in the upper part of the district; at places heaps or mounds of earth have formed three to three and one-half feet above the original bottom of the ditch; after rains the water is held back by submerged tile outlets so as to prevent the normal flow and cause flooding of lands in the district at the upper end of the ditch and drains leading into it; during pendency of the proceedings before the Board some of the intervenors and other landowners asked that its action be delayed to permit them to reduce the expense of a cleanout by removing the trees along the ditch on their lands; the evidence of the intervenors was that the drainage on their lands was satisfactory and a cleanout would not benefit them; however, three of their five witnesses had signed the original petition for a cleanout; their

position is that the costs of the cleanout would be too high; the ditch has not been cleaned out since 1920, the drainage has been growing less efficient for ten or twelve years; the matter has been twice called to the attention of the Board by petition and the Board has twice found the ditch should be cleaned out in order to restore it to its original efficiency and capacity.

The record amply supports these findings and we concur in them. It is clear repairs are necessary to make the drainage improvement function properly. The feasibility of such repairs is not questioned. Defendants' answer asserted one reason only for their abandonment of the proceedings to repair after they had determined repairs were necessary, viz.: the great majority of landowners objected to any expense. This was not a tenable reason for their failure to proceed with the repair. Nor does the record establish any other reason. It is our conclusion the conduct of the Board in the premises was unreasonable and arbitrary and constituted a virtual refusal to perform the duty enjoined upon it to keep the drainage improvement in repair.

II. Intervenors contend mandamus was not a proper remedy because of the discretion lodged in the Board. They cite Griebel v. Board of Supervisors, 200 Iowa 143, 202 N.W.379. In that case it was not feasible or practicable to repair an old line in the district and it was questionable whether the proposed new line, if constructed, would be of any more efficacy. In the case at bar the Board found and resolved it was necessary to repair the drainage improvement, appointed an engineer and thereafter approved and accepted his report and prepared to let contracts. Then because a great majority of the landowners objected to any expense it discontinued and abandoned the proceedings in response to their wishes. This was nothing less than abdication of its duties. Although the Board doubtless acted in good faith its conduct was tantamount to a refusal to act at all in the matter, notwithstanding its determination the drainage improvement should and could be placed in repair. Under the circumstances the court was not precluded from commanding that the Board perform its duty to repair the drainage improvement. Pierce v. Green, 229 Iowa 22, 39–43, 294 N.W. 237, 131 A.L.R. 335.

III. Section 455.92, Code of Iowa 1946, I. C. A., author-

izes an appeal from any final action of the Board and section 455.106 provides this remedy shall be exclusive. Intervenors contend these provisions barred mandamus. This suit was brought to compel the performance of an official duty enjoined by law. It was based upon the failure of the Board to act rather than upon any affirmative action. Hence, the provisions for appeal were not applicable. We need not determine the effect of subsequent changes in chapter 455.

Intervenors refer to the estimated cost of the work and suggest also it may be advisable to enlarge the drainage district. The trial court properly held those matters were not involved in the case. The Board is merely ordered to repair the drainage improvements. The manner in which it proceeds to do this is within its sound and honest discretion. Code section 661.2; Pierce v. Green, 229 Iowa 22, 40, 294 N.W. 237, 131 A.L.R. 335. Of course, this assumes compliance with statutes in effect when action is taken.—Affirmed.

All JUSTICES concur.