HOMER WELCH et al., appellees, v. JAY BORLAND et al., as trustees of DRAINAGE DISTRICT No. 17, appellants, and PAGE COUNTY, intervenor-appellee.

No. 48562.

(Reported in 66 N.W.2d 866)

NOVEMBER 16, 1954.

Paul V. Nichols, of Shenandoah, and Stephens, Thornell & Millhone, of Clarinda, for appellants.

Keenan & Clovis, of Shenandoah, for appellees.

Max Turner, of Clarinda, for intervenor-appellee.

HAYS, J.—In June 1920 Drainage District No. 17, Page County, Iowa, was established. The over-all cost thereof was $136,099.91. In December 1951 the management of the district was transferred from the Board of Supervisors to a Board of Trustees.

This action in mandamus is brought by certain landowners in said district against said trustees, asking that an order issue directing them to make repairs to the drainage ditch as provided by sections 455.135 and 455.148, Code of 1950. Page County intervened by joining with plaintiffs in the relief asked. After a hearing the order, as prayed, was issued by the trial court and the trustees have appealed.

Drainage District No. 17, Page County, Iowa, at least so far as material here, was a project to straighten the East Nishnabotna River within Page County and protect the land within the district from overflow. In furtherance thereof the district purchased a right-of-way 140 feet in width and diverted the river into the ditch dug thereon. This new channel ran under a bridge on a county road just north of Shenandoah, Iowa. In 1947 this ditch was repaired by the Board of Supervisors. Sometime prior to November 1951 the water in the drainage ditch left its channel and cut away the north approach to said bridge thus making the road impassable, and so it remains to date. In September 1951 the supervisors employed an engineer, Arnold C. Christensen, for the purpose of recommending necessary repairs in order to turn it back to its channel. Immediately thereafter, proceedings were started to place the district under a Board of Trustees, which was consummated on December 11, 1951, and further action by the supervisors was stopped. In January 1952

E. C. Fishbaugh, Jr., a plaintiff herein, petitioned the Board of Trustees to repair the ditch as recommended by engineer Christensen and for a hearing on the petition. Action on the petition was postponed by the trustees, and another engineer, Charles W. Weaver, was employed. Weaver made a report to the trustees, and in July 1952 they voted not to make repairs and also denied a hearing on the Fishbaugh petition. This action was commenced in August 1952.

Appellants assign four propositions as reasons for a reversal: (1) Mandamus is not the proper remedy. (2) The proposed repairs would not increase the efficiency or capacity of the ditch. (3) The trial court's order exceeds the relief asked by plaintiffs without competent evidence as to the cost. (4) No competent evidence that cost would not exceed 50% of the original cost, and notice and hearing are essential.

I. Is mandamus available to plaintiffs? Mandamus is brought to compel an inferior board to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust or station. Section 661.1, Code of 1950. Where discretion is left to the inferior tribunal, the mandamus can only compel it to act, but cannot control such discretion. Section 661.2, Code of 1950. It is provided by section 455.135, Code of 1950, that "when any * * * drainage district shall have been established and the improvement constructed, the same shall be at all times under the supervision of the board of supervisors except as otherwise provided for control and management by a board of trustees *and it shall be the duty of the board to keep the same in repair.*" (Italics ours.)

In Wise v. Board of Supervisors, 242 Iowa 870, 48 N.W.2d 247, we held that keeping a drainage ditch in repair was a mandatory statutory duty of the Board of Supervisors, and that in certain circumstances mandamus was available; that section 455.106, Code of 1950, as to appeal being an exclusive remedy, was not applicable.

Unless mandamus is barred by section 661.2, supra, there is no merit to this assignment. Appellants state that they have acted by refusing to order the repairs, and having exercised their discretion, only an appeal will lie. "Discretion" means acting officially under certain circumstances, according

to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others. Independent School District of Danbury v. Christiansen, 242 Iowa 963, 970, 49 N.W.2d 263. Such discretion cannot be disturbed unless it is shown to be arbitrary or capricious. Bankers Life and Casualty Co. v. Alexander, 242 Iowa 364, 379, 45 N.W.2d 258.

The record in this case shows conclusively that the ditch needs repairs. It is filled with debris, has completely departed from its proper right-of-way and is cutting across the private land of owners along it, in addition to destroying the approach to the bridge, above-mentioned. This condition was well known to the trustees. Jay Borland, trustee, and a defendant, testified: "I know that the river is not in its original right-of-way. * * * I knew that before I became a trustee in the district."

It appears that in 1947 there was filed with the Board of Supervisors a petition to dissolve the district, which was withdrawn. In June 1948 a new petition to dissolve was filed, to which objections were filed, with the record silent as to further proceeding. The witness, Borland, who signed the petition to dissolve, was asked: "Q. And wasn't there another reason why you refused to repair this improvement; that you wanted to have it dissolved?" He answered: "Yes, sir."

The record also shows that after the Fishbaugh petition was filed with the Board of Trustees in January 1952, the trustees employed as their engineer one Charles W. Weaver, ostensibly to report on the feasibility of making the repairs recommended to the Board of Supervisors in 1951 by engineer Christensen. A reading of the record on this phase of the case leads to the inescapable conclusion that he was employed to criticize the report of the engineer Christensen. He made no survey, plat or plans and offered no figures as to cost of the repairs. When Weaver was on the witness stand, the record shows the following:

"Q. You weren't contacted for the purpose of determining whether that ditch should be repaired? A. No. I wouldn't say so. No. Q. You weren't employed for that purpose? A. Not for the purpose of making the repair, if that is what you mean. I wasn't to make any recommendations as to repair work or anything like that." Also: "Q. And your report, as I understand

it, is only about, when it gets down to it, all it says is this—don't do what Mr. Christensen says, isn't that it? A. Somewhat, yes. That is the ultimate conclusion told the Board of Trustees as much as I knew about law. That it would be my opinion that unless the court ordered them to do something, they should not. I told them unless the court ordered them to do something, to do nothing."

This record shows bad faith on the part of the trustees and an arbitrary refusal to perform a known legal duty. Mandamus is a proper method of procedure in the instant case.

II. It is further claimed that the ditch as it now is does not decrease the efficiency or capacity since it was constructed, and the proposed repair would not improve it. This is based upon, or at least aided by, Weaver's testimony. It is:

"Q. Is it your understanding that if this stream gets out on somebody's private farm and cuts a channel that is big or bigger than the original channel was, that no duty is then placed on the trustees of this district? Is that your understanding of the drainage laws? A. That is my understanding of the drainage laws, yes."

Without further comment, suffice to say there is no merit to this claim.

III. It is claimed appellees' petition asked for repairs for a distance of a mile and a half but the court ordered repairs be made over a ten-mile distance (the entire district) without evidence as to the cost.

Conceded that in a mandamus action the court may not order more than is prayed for, such is not this case. The prayer of plaintiffs-appellees' petition is: "WHEREFORE, these plaintiffs pray that an order be entered herein directing the defendants * * * to take such steps as are necessary and sufficient to repair said ditch, restore it to its original right-of-way * * * so that it will perform the functions originally intended that it should perform. * * *." The petition and prayer covers the entire district. The question of cost will be considered in the next division.

IV. It is contended that there is no competent evidence

that the repair will not exceed 50% of the original cost, hence such repairs may not be ordered without notice and hearing.

Section 455.135, Code of 1950, lists certain things as repairs, such as removing silt, debris, etc. from the ditch, and provides that if the estimated cost thereof exceeds 50% of the original cost, notice and hearing are required. It also lists certain things as improvements, such as reopening, widening, and straightening any ditch, and provides if such estimated cost exceeds 25% of original cost, there must be notice and hearing.

The only evidence before the trustees and trial court as to what is needed to restore the original ditch is found in the report of engineer Christensen filed with the Board of Supervisors in 1951. This shows a study of conditions of the drain for a mile and a half north of the bridge. It recommends what must be called both repair and improvement with the total estimated cost at about $42,000. As to the balance of the district (about ten miles), the examination is cursory and the cost estimate highly speculative. Based upon the record it is at least doubtful if the trustees could have proceeded under the Christensen report without notice and hearing. This being true, the trial court should not order to be done that which could not be done under the record.

It is clear that it is contemplated that necessary repairs and improvements shall be made by the trustees, but that such shall be made only after competent investigation and a careful ascertainment of the cost thereof. In this there is no discretion vested in the Board, but thereafter the extent of the work done is discretionary.

The order appealed from directed that the trustees proceed with due diligence and in accordance with law to clean out the channel and to restore it to its right-of-way. It specifically stated that it was not giving any plan as to how the repairs should be made. We find nothing in this order warranting the objection urged thereto. It merely orders the Board of Trustees to do what the law orders done.

One other question is presented. The trial court states: "This action having been made necessary by the failure and refusal of the defendants to perform their duty toward said dis-

trict, it is hereby ordered that the cost of this action * * * be taxed on them personally." We are not disposed to change this order.

Finding no error the decree of the trial court should be and is affirmed.—Affirmed.

All JUSTICES concur.