Rick and Diane FISHER, Appellants,

v.

DALLAS COUNTY, Iowa, Drainage District No. 31, Dallas County, Iowa and the Board of Supervisors of Dallas County, Iowa, Acting on Behalf of Said Drainage District, Appellees.

No. 84–680.

Supreme Court of Iowa.

June 19, 1985.

George H. Capps of Comito & Capps, Des Moines, for appellants.

Lee H. Gaudineer and Jon K. Swanson of Austin & Gaudineer, Des Moines, for appellees.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON and SCHULTZ, JJ.

McGIVERIN, Justice.

Plaintiffs Rick and Diane Fisher appeal from the judgment of the district court after trial dismissing their petition against defendants Dallas County, Dallas County Drainage District No. 31, and the Dallas County Board of Supervisors acting on behalf of the drainage district. We affirm.

The issues we need consider on this appeal are (1) whether the trial court erred in ruling that a drainage district cannot be sued in tort for money damages, and (2) whether the trial court erred in dismissing plaintiffs' petition against defendants Dallas County and its board of supervisors.

In 1976 plaintiffs bought an undeveloped five-acre tract in Dallas County. The acreage adjoined a county gravel road. Located in the ditch between the road and plaintiffs' property were two signs reading, "County Intakes." The intakes led into a drainage tile line running beneath plaintiffs' property, although plaintiffs did not know this at the time they purchased the land. Plaintiffs' land was a part of defendant Drainage District 31 in Dallas County. *See* Iowa Code ch. 455. Before the purchase, plaintiffs inspected the acreage several times and did not observe any standing water on it or in the county ditch.

Plaintiffs proceeded to build a house on this land approximately two hundred feet from the county ditch. In June 1977, they and their children moved into the house.

In 1979 or 1980, plaintiffs first noticed that after heavy rains or spring thaws standing water would accumulate in the ditch and take a day or two to drain away. By the spring of 1981, this water, when it accumulated, began to encroach upon plaintiffs' property. They sought the advice of the county engineer, who recommended that they connect their basement sump pump to the drainage district's tile line. Plaintiffs followed this advice, but the water problem only worsened.

In January 1982, a thaw combined with precipitation resulted in the flooding of plaintiffs' basement and most of the 200-foot space between their house and the county road. This water did not drain away. Plaintiffs talked with a county supervisor about the flooding, but no action was taken by the county.

On July 12, 1982, plaintiffs filed the present action, seeking abatement of the water on their property as a nuisance and damages for the flooding on theories of failure to properly maintain the drainage

tile line, negligent inspection and maintenance of it, and negligent issuance of a permit for the building of plaintiffs' house.

In December 1982, a county work force excavated on and around plaintiffs' property to locate the drainage tile line suspected of causing the problem. After locating and opening the line near plaintiffs' house, the county crew removed some tree roots and debris and told plaintiffs the problem was solved. However, the water on their land did not recede and their basement continued to flood intermittently.

In early 1983, plaintiffs hired a private drainage contractor, who inspected the drainage tile line and opined that it was blocked. He proceeded to excavate the line in April 1983 and arranged for a local Roto-Rooter service to use a rooting machine on the line. The machine cleared tree roots from a 300-foot section of the line. Upon completion of the rooting operation, the water on plaintiffs' property drained away overnight and had not returned as of the time the case went to trial in March 1984. In view of this, plaintiffs dropped their claim seeking abatement of a nuisance and proceeded to trial only on the negligence and damage issues. Defendant district paid the expense of the private engineer and rooting operation.

After trial to the court, the district court entered findings of fact, conclusions of law, and judgment. Iowa R.Civ.P. 179(a). The court concluded as a matter of law that under the facts in the present case neither the drainage district nor the board of supervisors acting on its behalf could be sued for money damages. The court also concluded that Dallas County owed no legal duty to plaintiffs to prevent the injuries they had sustained from the flooding. Accordingly, the court dismissed plaintiffs' petition. This appeal by plaintiffs followed.

I. *Liability of the Drainage District to Plaintiffs.*

A. *Nature of a drainage district.* Article I, section 18 of the Constitution of Iowa empowers the legislature to

provide for the organization of drainage districts, vest the proper authorities with power to construct and maintain levees, drains, and ditches and to keep in repair all drains, ditches, and levees heretofore constructed under the laws of the state, *by special assessments upon the property benefited thereby.*

(Emphasis added.) The legislative provisions for the creation and maintenance of drainage districts are contained in Iowa Code chapter 455.

A drainage district is an area of land, set out by legal proceedings, which is subject to assessment for drainage improvements within the area. *State v. Olson,* 249 Iowa 536, 548, 86 N.W.2d 214, 221 (1958). Its affairs are managed by the county board of supervisors in a representative capacity. *Id.;* Iowa Code § 455.-135(1). Once the district's original construction has been completed and paid for, the district may be placed under the management of a board of trustees. Iowa Code § 462.1.

A drainage district may be formed on the petition of two or more owners of land within the proposed district. Iowa Code § 455.7. The board of supervisors has the authority to establish a drainage district if it finds that establishment of the district would benefit the public welfare. Iowa Code § 455.28.

The board of supervisors has the power to buy, lease, or condemn land on behalf of the drainage district. Iowa Code § 455.29. The board awards contracts for construction of drainage improvements to be made within the district. Iowa Code §§ 455.-40–.44. Drainage improvements include such things as ditches, drains, levees, and settling basins. Iowa Code § 455.18(2).

The cost of establishing a drainage district and constructing and maintaining its drainage lines and other improvements is defrayed by assessing the landowners within the district in proportion to the benefit that accrues to each owner's land from the establishment and maintenance of the district. Art. I, § 18 Iowa Const.; Iowa Code

§§ 455.45–.47. The board of supervisors on behalf of the district may also issue bonds, payable only out of money raised by future assessments, for the purpose of meeting the expenses of establishing or maintaining a drainage district. Iowa Code §§ 455.81, .82. The board, however, has no power to impose a general tax for the benefit of a drainage district.

■ B. *Legal status of drainage districts.* Our cases concerning the legal status of drainage districts have consistently noted the limited nature of their existence. They have only such powers as the statutes provide. *See Reed v. Muscatine-Louisa Drainage District No. 13*, 263 N.W.2d 548, 551 (Iowa 1978). This principle has circumscribed the cases in which we have allowed drainage districts to exist as juristic entities. Each such case has been based on a statutory provision concerning the powers or duties of a drainage district.

Thus, we have allowed suits in mandamus against a county board of supervisors, acting for the drainage district, to compel proper maintenance of a drainage district's drainage system. *See, e.g., Wise v. Board of Supervisors*, 242 Iowa 870, 48 N.W.2d 247 (1951). The duty of the board of supervisors to maintain drainage systems on behalf of the district is established by Iowa Code section 455.135(1).

We have allowed a suit to challenge the validity of a drainage district's assessments imposed on land within the district for repairs of the drainage line. *See Voogd v. Joint Drainage District No. 3–11, Kossuth & Winnebago Counties*, 188 N.W.2d 387 (Iowa 1971). The power to levy such assessments is granted by Iowa Code section 455.45.

An owner of realty within the drainage district may appeal to the district court from any final action of the board of supervisors with respect to the drainage district. Iowa Code § 455.92. Such appeal is made exclusive of all other remedies by section 455.106. We do not suggest that the Dallas County board of supervisors took any "final action" in the present case, but we believe that sections 455.92 and .106 are further indicative of the legislature's intent to sharply restrict the circumstances in which the affairs of a drainage district are subject to judicial action.

The limited nature of a drainage district's purposes and powers are, therefore, reflected in the limited circumstances in which a drainage district is subject to suit. Those circumstances have never been held to include demands for money damages on a tort theory for injury to land within the district. Suits have been allowed only to compel, complete, or correct the performance of a duty or the exercise of a power by those acting on behalf of a drainage district. Our cases have consistently held that a drainage district is not susceptible to suit for money damages. It has no corporate existence for that purpose. *See Board of Supervisors v. District Court*, 209 Iowa 1030, 1033, 229 N.W. 711, 712 (1930); *Maben v. Olson*, 187 Iowa 1060, 1070, 175 N.W. 512, 516 (1919); *Gish v. Castner-Williams and Askland Drainage District*, 136 Iowa 155, 157, 113 N.W. 757 (1907). *Cf. Holler v. Board of Supervisors*, 304 N.W.2d 441, 442 (Iowa Ct.App. 1980) (Iowa Code chapter 455 makes no provision for liability of drainage district for injuries to property resulting from performance of its statutory duties; landowners, therefore, could not sue for damages caused by flooding resulting from maintenance of drainage system).

■ C. *Effect of Iowa Code chapter 613A.* Plaintiffs do not contend that our prior cases, generally declaring drainage districts to be not suable in tort, were wrongly decided. Rather, plaintiffs argue that the enactment of Iowa Code chapter 613A represents a legislative overruling of those cases. Plaintiffs rely on the following language of chapter 613A.

613A.1 *Definitions.*

1. *"Municipality"* means city, county, township, school district, and any other unit of local government except a soil conservation district. . . .

. . . .

613A.2 *Liability imposed.* Except as otherwise provided in this chapter, every municipality is subject to liability for its torts and those of its officers and employees....

Plaintiffs maintain that a drainage district is a municipality within the meaning of section 613A.1(1) and, therefore, subject to suits in tort. We disagree.

As set forth in subdivision I–B above, both the statutes and our cases decided thereunder indicate that the limited nature of a drainage district's existence does not permit its liability in tort. We will not presume legislative repeal of this long-standing principle unless the legislature's intent to repeal it plainly appears by express declaration or necessary implication. *See Hines v. Illinois Cent. Gulf R.R.*, 330 N.W.2d 284, 289 (Iowa 1983).

Plaintiffs argue that the rule against liability of a drainage district in tort stems from the doctrine of sovereign immunity, which was abrogated by the enactment of chapter 613A. Accordingly, plaintiffs contend that repeal of the prior rule is necessarily implied from the enactment of chapter 613A.

We do not agree that a drainage district's immunity from suit in tort must stand or fall with the doctrine of sovereign immunity. Nothing in our prior cases suggests that sovereign immunity was the reason for denial of the right to sue a drainage district for money damages. The language of the cases indicates that, apart from any question of sovereign immunity, a drainage district is merely an area of land, not an entity subject to a judgment for tort damages.

This was never the case with such governmental entities as cities or counties. Even before the enactment of chapter 613A, a city could be sued for torts committed in a proprietary, as opposed to governmental, capacity. *See, e.g., Abbott v. City of Des Moines*, 230 Iowa 494, 502, 298 N.W. 649, 653 (1941). In contrast, a drain-

age district could not be subject to a money judgment in tort under any state of facts.

The reason for this, as we have stated above, is that the special and limited powers and duties conferred by the Iowa Constitution and the statutes do not include tort liability for money damages.[1] This state of affairs was not dependent upon the doctrine of sovereign immunity and so was not changed by the enactment of chapter 613A.

■ We, therefore, hold that a drainage district is not a "municipality" within the meaning of Iowa Code section 613A.1(1). A drainage district is not subject to suit in tort for money damages. The district court did not err in dismissing plaintiffs' petition with respect to the drainage district.

■ II. *Liability of Dallas County and its Board of Supervisors.* Plaintiffs' claims against the county and its board of supervisors must also be denied. Neither the county nor the board of supervisors can be vicariously liable for a money judgment against a drainage district. *See Board of Supervisors v. District Court*, 209 Iowa at 1033, 229 N.W. at 712.

On this appeal, plaintiffs raise only one issue regarding the county's liability which can be understood as based on negligence by the county in its own right. As noted above, plaintiffs in 1981 sought the advice of the county engineer in solving their flooding problem. He recommended that plaintiffs connect their basement sump pump to the county drainage line. Plaintiffs did so and testified that this worsened the problem.

Although plaintiffs concede that the county engineer was under no statutory or common-law duty to help them with their problem, they contend that once he undertook to help them, he was under a common-law duty to use reasonable care not to worsen their situation. This duty, plain-

1. The Iowa Constitution provides only that the land in the district is subject to special assessments upon the property benefited thereby. The limited statutory powers of the district are stated in subdivision I–A above.

tiffs maintain, was breached and injury to them resulted.

A question exists whether error was preserved in the trial court on the contention raised here by plaintiffs. We will pass that problem, however, and proceed to examine the merits of the assignment made.

This case was tried in equity. Therefore, the scope of our review is de novo. Iowa R.App.P. 4.

 Assuming *arguendo* that the county engineer was under a duty to use reasonable care once he undertook to advise plaintiffs about their problem, we cannot on this record conclude that this duty was breached. The fact that the county engineer's advice may have been wrong does not compel the conclusion that he did not exercise reasonable care in rendering it. The standard of care to which the county engineer was to be held was that degree of skill, care, and learning ordinarily possessed by other members of the engineering profession. *See Schiltz v. Cullen-Schiltz & Associates, Inc.*, 228 N.W.2d 10, 17 (Iowa 1975). The record contains no evidence regarding that standard of care and no evidence that the county engineer's acts in this case fell below that standard of care. Therefore, we cannot say that he breached the duty that plaintiffs assert he owed to them. The trial court was correct in dismissing the petition against the county.

For the reasons above stated, we conclude that plaintiffs' petition was properly dismissed against all defendants. Under the view we take of the case, we need not address the other contentions of the parties. The case is affirmed.

AFFIRMED.

All Justices concur except LARSON, J., who dissents.

LARSON, Justice (dissenting).

I dissent from Division I because I believe a drainage district is a "municipality," thus amenable to suit under our tort claim act, because of the broad definition of that term provided by the act:

"Municipality" means city, county, township, school district, and *any other unit of local government except a soil conservation district. . . .*

Iowa Code § 613A.1(1) (emphasis added).