# IN THE SUPREME COURT OF IOWA

No. 10–0061

Filed June 29, 2012

**CHICAGO CENTRAL & PACIFIC
RAILROAD COMPANY,**

    Appellant,

vs.

**CALHOUN COUNTY BOARD OF
SUPERVISORS,** Acting as Trustee
for the DRAINAGE DISTRICT NO. 86,

    Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Calhoun County, Gary L. McMinimee, Judge.

Appellant seeks further review of a court of appeals decision affirming the dismissal of appellant's suit for reimbursement of costs associated with the repair of a damaged tile drain under Iowa Code chapter 468 (2009). **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED, AND CASE REMANDED FOR DISMISSAL.**

Ellen J. Krug of Krug Law Firm, P.L.C., Minneapolis, for appellant.

James L. Kramer of Johnson, Kramer, Good, Mulholland, Cochrane & Driscoll, P.L.C., Fort Dodge and David Wollenzien, Manson, for appellee.

**ZAGER, Justice**.

Chicago Central and Pacific Railroad Company (CCP) seeks further review from a court of appeals decision affirming the district court's judgment in favor of the Calhoun County Board of Supervisors, acting as trustee for Drainage District No. 86, and dismissal of CCP's petition. This case presents two issues. The first is whether Iowa's drainage laws permit a private party to voluntarily perform repairs on a drainage improvement, request reimbursement for those repairs, and then file a petition with the district court when the request for reimbursement is denied. If we determine that Iowa law permits such a suit, we must then determine whether CCP or the Board is responsible for repairing or replacing underground drainage improvements at the location where those improvements intersect with CCP's right-of-way. Because we determine that Iowa law does not permit actions for reimbursement of money voluntarily spent by a private party to repair a drainage improvement, we need not decide the second issue. Accordingly, we affirm the district court's judgment in favor of the Board and the dismissal of CCP's petition.

## I. Factual Background and Procedural History.

The section of railroad track that forms the basis of this dispute was built between 1869 and 1870. Drainage District No. 86 was formed in 1908, and the Calhoun County Board of Supervisors is, by statute, responsible for keeping any drainage district improvements in repair. The tile line that intersects the railroad track was built by the drainage district in 1908. In May of 2008, CCP discovered a sinkhole on the edge of the tracks and reported the problem to the drainage district watchman. The clay tiles that made up the drain had collapsed. Crushed rock, which made up the ballast that supported the railroad

bed, was sucked into the tile drain, creating the hole. In response to this discovery, CCP slowed its trains to ten miles per hour over the affected area and made a temporary repair by filling the hole with crushed rock.

On May 8, the drainage district watchman inspected the location and found that the hole had been filled with crushed rock. The next day, a CCP technical service engineer contacted the district watchman and requested the Board repair the collapsed tile by replacing it with a one-quarter-inch-thick steel pipe. The CCP engineer testified that he and the district watchman originally "had a deal struck . . . to work together and get the tile repaired," but that deal was later called off. On May 20, a drainage engineer sent a letter to the CCP engineer on behalf of the drainage district. This letter stated that under Iowa Code section 468.111, CCP was responsible for any repairs that needed to be made to the crossing.[1] The letter also stated,

> [W]ith this letter we are reporting this situation to the Calhoun County Board of Supervisors, acting as Trustees for the Drainage District No. 86. On behalf of the District we are requesting the CC&P Railroad Company report their plan for repairing the railroad and notify the board and [the district watchman] of the time frame for completing the repair.

The letter went on to tell CCP that the district watchman would "be made available to assist [CCP] in exploring the failure of the pipe under the railroad right-of-way" and that the district would have to inspect the reconnections before the completion of the repairs. The drainage engineer also testified that he told the district watchman that the district

---

[1]Section 468.111 requires railroads to pay for the repairs of "any culvert or bridge" at locations where railroad rights-of-way intersect with drainage district improvements and the intersection occurs at a natural waterway or a place provided by the railroad. Iowa Code § 468.111 (2009).

did not have the right to enter the railroad's right-of-way and that it was the responsibility of the railroad to repair the damaged tile drain.

On August 8, CCP sent a letter to the Board, informing it that CCP had undertaken repairs to the tile drain and seeking reimbursement. To repair the tile drain, CCP paid Wieston Ag Service, Inc., $11,003.28 to clear the collapsed tile drain, insert a one-quarter-inch-thick, forty-foot-long steel casing under the railroad's right-of-way, run new tile lines through the steel casing and reconnect the new tile line to the existing line on either side of the right-of-way. In addition to the $11,003.28 in repair costs, CCP's notice of claim also sought $4888.36 in "train delay costs" that CCP incurred as a result of having to slow down its trains near the collapsed tile drain.

On November 25, the Board denied the claim. On December 18, CCP sent a notice of appeal to the Calhoun County Auditor. The notice cited Iowa Code section 468.84 and, pursuant to that section, designated the Calhoun County District Court as the forum court for the appeal. On December 30, CCP filed its petition pursuant to section 468.86 in Calhoun County.

The Board filed an answer on January 15, 2009, admitting CCP made the repairs, but asserting CCP was responsible for the costs of such repairs. CCP moved for summary judgment on June 23. On August 24, the Board resisted and filed a cross-motion for summary judgment, claiming that it was immune from the suit and, in the alternative, that CCP bore responsibility for the repairs.

On September 29, the district court conducted a hearing including testimony from four witnesses and a stipulation of facts. On December 14, 2009, the district court issued its ruling dismissing CCP's petition and entering judgment in favor of the Board. The district court

acknowledged the Board's immunity claim but did not rule on it. Instead, the court construed the word "culvert," as that term is used in section 468.111, to include an underground tile drain where it intersected a railroad track. The district court also concluded that the intersection point occurred in a natural waterway, and therefore, under section 468.111, CCP was liable for the costs of repair. CCP timely filed a notice of appeal on January 11, 2010. On appeal, the Board responded to the statutory construction claim and also raised the immunity issue. The court of appeals did not reach the immunity claim, but affirmed the district court's rulings that section 468.111 applied, that the intersection of the tile drain and the railroad was a culvert for purposes of that section, and that CCP was responsible for repairs to the culvert. CCP petitioned for further review, which we granted.

## II. Standard of Review.

This case was originally tried as an appeal pursuant to Iowa Code section 468.83 (2009). Appeals brought under section 468.83 are tried in equity unless the appeal is from Board action fixing the amount of compensation for the taking of land for a right-of-way or "the amount of damages to which any claimant is entitled." Iowa Code § 468.91. This dispute does not concern the amount of damages CCP is entitled to; rather, the issue is whether CCP is entitled to recover damages at all. Therefore, the action must be tried in equity under section 468.91. The parties also stipulated that this action should be tried in equity. Our review of equitable proceedings is de novo. *See Voogd v. Joint Drainage Dist. No. 3-11*, 188 N.W.2d 387, 388 (Iowa 1971).

However, this case also requires us to determine whether chapter 468 of the Iowa Code allows CCP to file a suit against the Board for money CCP voluntarily spent to repair a drainage improvement.

Specifically, we must determine whether section 468.83 is applicable to this dispute. Resolution of these disputes turns on questions of statutory construction, and we "review questions of statutory construction for correction of errors at law. Consequently, our review is for correction of errors at law." *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa 2008) (citation omitted).

### III. Statutory Framework.

Article I, section 18 of the Iowa Constitution allows the legislature to

> provide for the organization of drainage districts, vest the proper authorities with power to construct and maintain levees, drains and ditches and to keep in repair all drains, ditches, and levees heretofore constructed under the laws of the state, by special assessments upon the property benefited thereby.

Iowa Const. art. I, § 18. Chapter 468 of the Iowa Code contains the multitude of provisions that govern the creation, operation, and funding of drainage districts. Section 468.2 declares that "[t]he drainage of surface waters from agricultural lands and all other lands or the protection of such lands from overflow shall be presumed to be a public benefit and conducive to the public health, convenience, and welfare." Iowa Code § 468.2(1). A county board of supervisors has the authority to establish a drainage district when it is "conducive to the public health, convenience or welfare." *Id.* § 468.1.

The following passage provides a general overview of drainage districts in Iowa:

> A drainage district is an area of land, set out by legal proceedings, which is subject to assessment for drainage improvements within the area. Its affairs are managed by the county board of supervisors in a representative capacity. Once the district's original construction has been completed and paid for, the district may be placed under the management of a board of trustees.

> A drainage district may be formed on the petition of two or more owners of land within the proposed district. The board of supervisors has the authority to establish a drainage district if it finds that establishment of the district would benefit the public welfare.
>
> The board of supervisors has the power to buy, lease, or condemn land on behalf of the drainage district. The board awards contracts for construction of drainage improvements to be made within the district. Drainage improvements include such things as ditches, drains, levees, and settling basins.

*Fisher v. Dallas County*, 369 N.W.2d 426, 428 (Iowa 1985) (citations omitted).

Two or more landowners may petition the county auditor for the establishment of a drainage district. Iowa Code § 468.6. The board of supervisors then appoints an engineer who must survey the land to be contained in the proposed district and file a report with the board proposing a plan for the district. *Id.* §§ 468.10–.12. If the board approves the engineer's plan and report, then the board must set a hearing date for the petition and the auditor must notify each landowner within the proposed district. *Id.* § 468.14. The notice must, among other things, inform landowners in the proposed district

> that all claims for damages except claims for land required for right-of-way, and all objections to the establishment of said district for any reason must be made in writing and filed in the office of the auditor at or before the time set for such hearing.

*Id.*

At the hearing, the board must determine whether the construction of the proposed drainage improvement will materially benefit the land in the proposed district and be "conducive to the public health, convenience, or welfare." *See id.* § 468.21–.22. The board must

> consider the costs of construction of the improvement as shown by the reports of the engineer and the amount of

> damages and compensation awarded to all claimants, and if . . . it finds that the cost and expense is not a greater burden than should be justly borne by the land benefited by the improvement, it shall finally and permanently locate and establish the district and improvement.

*Id.* § 468.27. Once a drainage district is established, it acquires a permanent easement for purposes of constructing and maintaining the drainage improvement. *Id.*

Chapter 468 also lays out a funding mechanism for the construction of drainage improvements across the district's newly acquired easements and lands:

> The cost of establishing a drainage district and constructing and maintaining its drainage lines and other improvements is defrayed by assessing the landowners within the district in proportion to the benefit that accrues to each owner's land from the establishment and maintenance of the district. The board of supervisors on behalf of the district may also issue bonds, payable only out of money raised by future assessments, for the purpose of meeting the expenses of establishing or maintaining a drainage district. The board, however, has no power to impose a general tax for the benefit of a drainage district.

*Fisher*, 369 N.W.2d at 428–29 (citations omitted). Drainage and levee taxes are levied and collected by the county treasurer and kept in a separate fund. Iowa Code § 468.528. The treasurer may only disburse the money on "the orders of [the board of] trustees, signed by the president of the board, upon which warrants shall be drawn by the auditor upon the treasurer." *Id.*

Once a drainage improvement has been constructed, drainage districts have "a positive mandate to keep the drainage system in such condition that it will function properly and perform the service for which it was intended." *Wise v. Bd. of Supervisors*, 242 Iowa 870, 873, 48 N.W.2d 247, 248 (1951); *see also* Iowa Code § 468.126(1). However, the Code gives the board a number of different ways to repair, restore or

maintain the drainage improvement. *See* Iowa Code § 468.126. Depending on the extent of the repair, the board may be required to provide landowners in the district with notice and a hearing. *Id.* § 468.126(1)(*c*).

The costs of repairs or new improvements must be paid from the funds of the drainage district. *Id.* § 468.127. If there are insufficient funds on hand, "the board within two years shall levy an assessment sufficient to pay the outstanding indebtedness and leave the balance which the board determines is desirable as a sinking fund to pay maintenance and repair expenses." *Id.*; *see also id.* § 468.61. Thus, any repair to the drainage improvement will ultimately be paid for solely by assessing the property located in the district.

Drainage district improvements must necessarily cross railroad rights-of-way. Sections 468.109 to 468.113 address how the cost of these intersections will be allocated between the district and the railroad. Iowa Code §§ 468.109–.113; *Chi. & Nw. Transp. Co. v. Webster Cnty. Bd. of Supervisors*, 880 F. Supp. 1290, 1295–96 (N.D. Iowa), *aff'd*, 71 F.3d 265 (8th Cir. 1995). When a proposed improvement crosses a right-of-way, section 468.109 requires the board to serve notice on the railroad, indicating the nature and location of the improvement and the plans for how the improvement will cross the right-of-way. Iowa Code § 468.109; *Chi. & Nw. Transp. Co.*, 880 F. Supp. at 1295. The railroad company is then directed

> to construct such improvement according to said plans and specifications at the place designated, across its right of way, and to build and construct or rebuild and reconstruct the necessary culvert or bridge where any ditch, drain, or watercourse crosses its right of way, so as not to obstruct, impede, or interfere with the free flow of the water therein, within thirty days from the time of the service of such notice upon it.

Iowa Code § 468.109.

Should the railroad fail to construct the culvert or bridge within thirty days, the board may construct the intersection itself and collect the costs, including any necessary attorney's fees, from the railroad in the appropriate district court. *Id.* § 468.112. If the culvert or bridge that is needed at the intersection is located at a natural waterway or a place provided by the railroad for the flow of water, then the cost of the bridge or culvert must be borne by the railroad without reimbursement from the drainage district. *Id.* § 468.111. However, if the culvert or bridge is not at a natural watercourse or place chosen by the railroad for the flow of water, then the railroad must be reimbursed for the cost of the construction ordered by the district in the notice provided in section 468.109. *See Chi., Rock Island & Pac. Ry. v. Bd. of Supervisors*, 196 Iowa 370, 372, 194 N.W. 266, 267 (1923).

With this statutory framework in mind, we now address the parties' arguments in this case.

**IV. Whether a Private Party Can Bring a Suit Against a Drainage District for Reimbursement of Money Spent Repairing the Intersection of a Drainage Improvement and a Railway.**

The Board claims that Iowa law does not allow a suit against a drainage district for money damages. The Board also claims that if CCP felt the Board was not performing its statutory duty to repair its drainage improvements, the proper remedy was to file a mandamus action to compel the Board to properly maintain the drainage improvement, not to simply repair the collapsed area under the railroad's right-of-way and then file a suit for reimbursement. CCP claims that this was an emergency situation and that the appeals provision found in section 468.83 authorizes CCP to seek reimbursement from the Board in the district court.

**A. Error Preservation.** As a preliminary matter, we must first determine whether the statutory immunity issue is properly before us. CCP moved for summary judgment on June 23, 2009. The Board resisted and moved for summary judgment in its favor on August 24, 2009. The Board's brief supporting its motion for summary judgment argued that the drainage district was immune from CCP's suit for damages because there is no provision of Iowa law "that authorizes or creates a cause of action in favor of a railroad against the trustees of the drainage district to recover the railroad's expense in repairing its culvert." In a reply brief, CCP "concede[d] that [it] could have sought a mandamus, [but] the problem here was timeliness."[2] The issue was also discussed at the hearing, and the district court acknowledged the Board's immunity claim in its December 14 ruling. Although the district court ultimately found for the Board and dismissed CCP's petition, it did not rule on the Board's immunity claim. The Board also briefed the issue on appeal, and CCP addressed the issue in its reply brief.

"[W]e will affirm a trial court on any basis appearing in the record and urged by the prevailing party." *In re Estate of Voss*, 553 N.W.2d 878, 879 n.1 (Iowa 1996). Because the Board raised the issue before the

---

[2]CCP also claimed that the Board did not raise the issue of immunity at the hearing or in the answer to CCP's petition and that "[t]he failure to assert the defense should be sufficient to reject the defense." Under Iowa Rule of Civil Procedure 1.421(1), certain defenses may be raised by pre-answer motion, and if a filed pre-answer motion does not contain those defenses, the defenses will be deemed waived. Iowa R. Civ. P. 1.421(1), (4). The Board did not file a pre-answer motion and chose to raise the immunity defense in its motion for summary judgment.

> The use of the word "may" [in rule 1.421(1)] indicates that raising such defenses in a pre-answer motion is permissive, and as such, the pleader may choose to raise the defense in a pre-answer motion, a responsive pleading, or in some other manner such as a motion for summary judgment.

*Antolik v. McMahon*, 744 N.W.2d 82, 83–84 (Iowa 2007). Accordingly, the issue is not waived.

district court, prevailed in that court on another ground, and raised the issue on appeal as an alternative ground for affirming the district court's dismissal of CCP's petition, error has been preserved, and the issue is properly before this court. *See id.*

**B. Whether Mandamus is the Proper Remedy.** Once a drainage improvement has been constructed, the board, acting as trustee for the drainage district, has a duty to "keep the improvement in repair." Iowa Code § 468.126(1). "[K]eeping a drainage ditch in repair [is] a mandatory statutory duty of the Board of Supervisors . . . ." *Welch v. Borland*, 246 Iowa 119, 121, 66 N.W.2d 866, 868 (1954). If the board fails to perform the required repairs, then a mandamus action is the appropriate remedy for a complaining party.[3] *See Voogd*, 188 N.W.2d at 391 ("A drain once completed is under the supervision of the supervisors, and they can be compelled by mandamus to maintain it and keep it in repair."); *Welch*, 246 Iowa at 121–22, 66 N.W.2d at 868; *see also Wise*, 242 Iowa at 874–75, 48 N.W.2d at 249. Following a successful mandamus action, "[t]he board is merely ordered to repair the drainage improvements. The manner in which it proceeds to do this is within its sound and honest discretion." *Wise*, 242 Iowa at 875, 48 N.W.2d at 249. We have also held that a board's refusal to repair a drainage improvement is a refusal to act rather than an affirmative action. *Id.* Therefore, the appeal provisions contained in sections 468.83 and 468.96 are not applicable in

---

[3]According to the Iowa Code,

> The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station.

Iowa Code § 661.1.

such a situation and mandamus is the appropriate remedy.[4] *Id.* at 874–75, 48 N.W.2d at 249; *see also Welch*, 246 Iowa at 121–23, 66 N.W.2d at 868–69.

Our more recent cases have continued to recognize that there are "limited circumstances in which a drainage district is subject to suit" and that the legislature has "sharply restrict[ed] the circumstances in which the affairs of a drainage district are subject to judicial action." *Fisher*, 369 N.W.2d at 429. "Our cases have consistently held that a drainage district is not susceptible to suit for money damages. It has no corporate existence for that purpose." *Id.* A drainage district's immunity is not based on the doctrine of sovereign immunity; instead, it flows from the fact that a drainage district is an entity with "special and limited powers and duties conferred by the Iowa Constitution." *Id.* at 430. The special and limited powers of a district mean that a drainage district can only be sued to compel, complete, or correct the performance of the board or the district. *Id.* at 429 ("Suits have been allowed only to compel, complete, or correct the performance of a duty or the exercise of a power by those acting on behalf of a drainage district."); *see also Gard v. Little Sioux Intercounty Drainage Dist.*, 521 N.W.2d 696, 698 (Iowa 1994) (reaffirming *Fisher*).

As noted above, our previous interpretations of chapter 468 provide that if a party believes a board of supervisors is not performing its statutory duty to keep a drainage improvement in repair, that party's remedy is a mandamus action to compel the board to perform its duty.

---

[4] *Wise* refers to various sections of chapter 455 of the Iowa Code. In 1989, the legislature reorganized the provisions on drainage law and moved chapter 455 to chapter 468. 1989 Iowa Acts ch. 126, § 2(2). However, the substance of the appeal provisions was not changed. *Compare* Iowa Code §§ 455.92, .106 (1987), *with* Iowa Code §§ 468.83(1), .96 (2009).

We have recognized this remedy for over sixty years. *Wise*, 242 Iowa at 874–75, 48 N.W.2d at 249. The legislature has not responded to our interpretation of this aspect of the drainage district statutes, indicating its tacit acceptance of mandamus as the appropriate remedy for board inaction. *See Gard*, 521 N.W.2d at 698 ("Under similar circumstances we have invoked the principle that issues of statutory interpretation settled by the court and not disturbed by the legislature have become tacitly accepted by the legislature."). We see no reason to abandon our previous holdings that, in situations such as the one before us, mandamus is the proper remedy. If the mandamus action is successful and a court orders the board to make repairs, how the board chooses to make the repairs is "within its sound and honest discretion." *Wise*, 242 Iowa at 875, 48 N.W.2d at 249. A mandamus action ensures that the board will perform its duty to maintain drainage improvements; at the same time, it respects the board's wide discretion regarding the exact manner and nature of the repair to be undertaken. *See* Iowa Code § 468.126 (providing a board several options and procedures for repairing and reconstructing drainage improvements).

Before the district court and at oral argument, CCP acknowledged that mandamus was a possible route it could have taken to compel the Board to repair the damage to the drainage improvement. However, CCP claims that a mandamus action would have been untimely, impractical, and prejudicial to CCP. According to CCP, "the repairs had to be undertaken immediately—this is a railroad moving freight after all."

The emergency nature of the repair performed by CCP was discussed at the hearing. CCP's attorney questioned the railroad's technical service engineer about the impact of delaying the repair:

> Q. . . . [W]hat was the time period from when the problem was first discovered until when it was fixed? A. It was approximately two months.
>
> Q. All right. A. If memory serves me about 56 days.
>
> Q. And because this is the railroad's main line, could the railroad have waited months in order to have it fixed? A. Oh, no, no, as a matter of fact, we affected temporary repairs and we tried to go in and make the repairs, but this was in May and if you remember correctly in May of 2008, the monsoons began here in Iowa, so we—we basically couldn't actually get the contractor to do the work until things dried up. It wouldn't have been safe for him to try it.
>
> Q. But if you had waited months to make the repairs, how would it have impacted the railroad? A. Well, we dealt with the ten mile an hour slow-over during that period of time.
>
> Q. What does slow-over mean? A. We have to slow our trains down, it obviously takes more time and fuel consumption to do that because we have to start and stop.
>
> Q. So over this section of track, they could only go ten miles an hour? A. That's correct.
>
> Q. What is the speed limit of that track? A. The normal speed limit over that track is either 40 or 50 miles per hour, I don't remember right exactly.
>
> Q. And would this have been considered an emergency for the railroad? A. Oh, yeah, yeah.

In the event of an emergency, the railroad argues it is free to make whatever repairs it desires and then force the drainage district to pay for those repairs. CCP has not provided any cases or statutes which support the idea that a mandamus action is the appropriate remedy when the board refuses to make repairs, unless a railroad is responding to an emergency.

The lack of authority for CCP's position is not surprising because the statute is simply not set up this way. The board is responsible for seeing that repairs are made. Iowa Code § 468.126. When a drainage improvement crossing the railroad's right-of-way needs to be rebuilt or

reconstructed, the board is responsible for drawing up plans for the rebuilding or reconstruction of the improvement and serving those plans on the railroad. *Id.* § 468.109. The railroad then has a duty to "build or rebuild the necessary culvert or bridge." *Id.* § 468.110. If the railroad refuses, the board "shall provide for the construction of the improvement" and may file suit against the railroad to collect the cost. *Id.* § 468.112. There is no corresponding provision that allows the process to work in reverse, where the railroad determines how the repair or reconstruction should be constructed, makes the repair, and then files suit against the board or the district for reimbursement. The legislature has not created such a provision, and we are bound by that choice.

Moreover, the facts of this case do not support the creation of an exception to our general rule requiring a mandamus action to compel the Board to make repairs. CCP was able to continue using the track after it made a temporary repair by filling the collapsed tile with crushed rock. Once the temporary repair was in place, CCP did not stop running trains over the affected area, but instead slowed them to ten miles per hour. This may have been inconvenient and increased CCP's fuel costs, but it does not rise to the level of an emergency that would convince us to set aside well-established precedent and upset the system the legislature has established for building and maintaining drainage improvements. Additionally, according to CCP's engineer, heavy rains and wet conditions made it impossible to make a permanent repair to the drainage improvement for nearly two months. During this time, CCP could have filed a mandamus action against the Board to compel it to repair the drainage improvement in whatever way the Board saw fit. Instead, CCP chose to make the repairs on its own, without direction from the Board, and now seeks reimbursement under the same statutory framework that

it initially chose to sidestep. A mandamus action was the proper course of action under the facts of this case.

**C. Whether the Appeals Provision is Applicable to This Dispute.** CCP filed its petition with the district court under section 468.86 and claims section 468.83 is an enabling provision that allows it to file suit against the Board. Section 468.83 provides that "[a]ny person aggrieved may appeal from any final action of the board in relation to any matter involving the person's rights, to the district court of the county in which the proceeding was held." Iowa Code § 468.83(1). CCP filed a claim with the Board for reimbursement of the cost to repair the drainage improvement and for the increased fuel costs associated with the train slow down. The Board denied this claim which, as noted above, was not based on any statutory provision cited to this court. CCP claims that the language "any matter involving the person's rights" is broad enough to encompass the denial of a claim for reimbursement. We disagree.

We begin by noting that when a drainage district refuses to make repairs, a mandamus action, and not an appeal, is the proper remedy. In *Wise*, the plaintiffs filed an action in mandamus against the board to compel the board to clear a drain and ditch. 242 Iowa at 872, 48 N.W.2d at 248. The board claimed that the appeal provision barred a mandamus action. *Id.* at 874–75, 48 N.W.2d at 249. We disagreed and noted that the "suit was brought to compel the performance of an official duty enjoined by law. It was based upon the failure by the board to act rather than upon any affirmative action. *Hence, the provisions for appeal were not applicable."* *Id.* at 875, 48 N.W.2d at 249 (emphasis added). We reaffirmed this position three years later, in *Welch v. Borland*, 246 Iowa 119, 66 N.W.2d 866 (1954). There, we decided a case where landowners brought a mandamus action "asking that an order issue directing [the

board] to make repairs to the drainage ditch." *Id.* at 120–21, 66 N.W.2d at 867–68. We held that a mandamus action was a proper remedy for the board's refusal to act. *Id.* at 123, 66 N.W.2d at 869.

We do not believe the legislature intended the appeal provision to apply to a case such as this one where a railroad voluntarily makes repairs and then sues the district for reimbursement. Section 468.83 only involves board decisions impacting a person's rights. Since CCP did not follow the statutory framework, it had no right to compensation. Drainage district funds can only be spent when authorized by the board. Iowa Code § 468.528. Depending on what course of action the board had chosen to take to repair or rebuild the drainage improvement at issue in this case, it may have been necessary to give notice to landowners and hold a hearing. *Id.* § 468.126. Here, the record does not indicate that the Board approved the type of repair CCP made to the drainage improvement or the expense incurred in making the repairs. When CCP undertook this repair without following proper procedures, it took the risk that it might not be compensated for the repair if statutory procedures were not followed. *See Voogd*, 188 N.W.2d at 393 ("[T]he party who enters into a contract with . . . a political subdivision of a county does so at the peril that the political subdivision . . . involved has not complied with . . . its statutory mandate from the legislature."). CCP's decision to repair the tile drain without receiving the notice and plans required by section 468.109 meant that it had no right to expect reimbursement that was not provided for in chapter 468. Simply put, CCP's decision and action was voluntary and was not the result of the Board's actions.

The history of the appeal provision further convinces us that it was not drafted to permit judicial review of the Board's decision not to

reimburse those who voluntarily make repairs on their own property. The Iowa Code was substantially revised in 1924. As part of that revision, the legislature amended, revised and codified various provisions of Iowa's drainage law. Iowa Code Revision Bills No. 185 (1923) (codified at Iowa Code § 7513 (1924)). The statutory language currently contained in section 468.83(1) appeared for the first time in that bill. *Compare id.* § 72, *with* Iowa Code § 468.83(1) (2009). According to the notes that accompanied the code revision bill, the broad language contained in that section "substituted for many provisions scattered throughout the present law." Iowa Code Revision Bills No. 185, § 72, note, at 185-41 to 185-42. According to the code commissioner, the new appeal provision was designed to replace the appeals provisions found in sections 4841, 4850, 4854 and 4861 of the Code in effect at that time.[5] *Id.* These sections all addressed situations where the board was exercising its authority to compel some sort of action by a private landowner or the board's attempt to change some aspects of a landowner's property. *See* Iowa Code §§ 4841, 4850, 4854, 4861 (1919). The appeals provision

---

[5]Section 4841 described the process for the assessment of damages when a drainage improvement was constructed. Iowa Code § 4841 (1919). It also allowed any aggrieved party to "appeal from the finding of the board in establishing or refusing to establish the improvement district or from its finding in the allowance of damages." *Id.* Section 4850 allowed the board to enlarge, deepen or otherwise change a drainage improvement after the district was established, but before it was completed, and provided for an appeal from the board's decision to make such a modification. *Id.* § 4850. Section 4854 permitted an appeal "from the order of the board fixing the assessment of benefits upon the lands." *Id.* § 4854. Section 4861 allowed the drainage district to make repairs and levy the costs of those repairs on the land in the district. *Id.* § 4861. If plant roots were obstructing a drainage improvement, section 4861 also allowed the board to destroy and remove the plants that are causing the obstruction. *Id.* If the board and the landowner could not agree on the damages for destroying the plants, then the board determined the damages owed to the landowner for the destruction of the plants and the landowner had a right of appeal from that determination. *Id.*

simply did not contemplate a situation where a property owner designed and performed his own repairs and then filed suit against the board.

The structure of the appeal provision has not changed. In the current Code, the appeal provision immediately follows the provisions relating to the condemnation, assessment, and levying of taxes on land within the district. *See generally* Iowa Code §§ 468.1–.82 (2009). A provision allowing suits for the repayment of private money spent outside the statutory scheme has not been added. Allowing the appeal in this case would effectively overturn the cases which hold the remedy for the board's inaction is mandamus. If an appeal can be brought when the board denies a claim for reimbursement, then rather than seek mandamus, a private party would simply make repairs however he or she sees fit, ask the board for reimbursement, and file suit when that reimbursement is denied. This process will effectively remove decisions about the repair, reconstruction and rebuilding of drainage improvements from the hands of the board, which is the body assigned to make such decisions. Private parties would simply be free to make their own decisions regarding the nature, extent, and method of repair and then force the board—and thus the landowners in the district—to pay for those repairs. This is not the system the legislature devised, and we do not believe the legislature intended the appeal provision to be used in this manner. We reiterate the point made in our prior cases: when a suit is "based upon the failure of the Board to act rather than upon any affirmative action, . . . the provisions for appeal [are] not applicable." *Wise*, 242 Iowa at 875, 48 N.W.2d at 249.

### V. Disposition.

Under the statutory scheme enacted by the legislature, the Board has the duty to keep improvements in repair, but it also has the

discretion to decide how it will fulfill that duty. CCP's suit essentially asks us to remove the Board's discretion while leaving its responsibilities intact. This is not the way the chapter operates. Suits against drainage districts "have been allowed only to compel, complete, or correct the performance of a duty or the exercise of a power by those acting on behalf of a drainage district." *Fisher*, 369 N.W.2d at 429. Because the law does not permit CCP to bring this suit, the district court properly dismissed the action, albeit on a different basis. Accordingly, we vacate the decision of the court of appeals and affirm the district court's dismissal of CCP's petition.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED, AND CASE REMANDED FOR DISMISSAL.**

All justices concur except Mansfield, J., who takes no part.