CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant, v. BOARD OF SUPERVISORS OF WASHINGTON COUNTY et al., Appellees.

**DRAINS: Damages—Bridges Across Railroad.** A railway company must construct and maintain at its own expense a bridge over a public drain crossing the right of way *at the natural* waterway.

*Appeal from Washington District Court.*—D. W. HAMILTON, Judge.

JUNE 22, 1923.

REHEARING DENIED SEPTEMBER 22, 1923.

APPEAL from refusal to award damages for construction of bridge and for right of way in connection with Drainage District No. 6 of Washington County, Iowa. Facts appear in the opinion.—*Affirmed.*

*Livingston & Eicher, J. G. Gamble,* and *A. B. Howland,* for appellant.

*W. M. Keeley,* for appellees.

ARTHUR, J.—I. The portion of this district with which we are concerned, beginning about the section line on the north side

of Sections 8 and 9, slopes gently southward over Sections 8 and 9 and 16 and 17 to the English River, which is the outlet of the improvements in said district. The plaintiff company's railroad extends through this district east and west on the section line between Sections 8 and 9 and 16 and 17. The drainage ditch here involved begins near the north line of Sections 8 and 9, and extends directly south on the section line between Sections 8 and 9 to the railroad right of way, and thence across the right of way directly south about a quarter of a mile, and then curves to the west, and enters the main ditch of the drainage system in a distance of about another quarter of a mile. The surface of the land of the district is practically flat, with slight slope to the south and southeast. Before the new ditch, the ditch in controversy, was constructed, there existed a ditch beginning about a quarter of a mile north of the line of the railroad, and extending directly south and across the railroad right of way between 300 and 400 feet west of the new ditch, known as the Jackson Ditch. This ditch has existed for many years. This ditch was from 5 to 7 feet in width at the top, and 3 or 4 feet deep. The company has maintained a permanent bridge across the Jackson Ditch. When the drainage ditch in controversy was established and constructed, plaintiff company built a bridge across it. The new ditch is 28 feet in width across the top.

The plaintiff company presented claim before the board for $15,000 damages on account of the construction of the ditch across its right of way, for the cost of constructing a permanent bridge, and for right of way taken for the ditch. The board allowed plaintiff's claim in the amount of $81, that amount being allowed as compensation for a fraction of an acre of land, used for construction of the ditch. Nothing was allowed for cost of construction of a permanent bridge or for maintenance of a bridge over the new ditch. Appeal was taken by plaintiff to the district court. At the conclusion of all the evidence in the trial in the district court, plaintiff moved for a directed verdict in its favor. The court overruled plaintiff's motion, and sustained the motion of defendants, and directed a verdict in favor of defendants, and entered judgment against plaintiff for costs, from which judgment this appeal is taken. Plaintiff's

motion for a directed verdict, in substance, was that the evidence without dispute showed that the drainage ditch in controversy, constructed across the right of way of plaintiff, is not at the point of natural waterway; and that the record affirmatively shows that the Jackson Ditch, the place provided by the railway company for the flow of water, was and is the natural waterway.

The grounds of defendants' motion to direct verdict in their favor were that the evidence without dispute showed that the new drainage ditch at the place where it crosses the right of way of the railroad is the natural waterway or watercourse, and that the undisputed evidence shows that said ditch was constructed at said point as a means for drainage and improvement of the territory north of said railroad, and to facilitate drainage of said lands as a means of improvement of said district.

Other questions were raised in the motions which we need not consider.

II.   The controversy arises under Section 1989-a18 of the Supplement to the Code, 1913.   Portions of that section material in this action are as follows:

"And the cost of constructing the improvement across the right of way of such company, not including the cost of building and constructing or rebuilding and reconstructing any necessary culvert or bridge when such improvement is located at the place of the natural waterway or place provided by the railroad company for the flow of the water, shall be considered as an element of such company's damages by the appraisers thereof; and the cost of building and constructing or rebuilding and reconstructing any necessary culvert or bridge when such improvement is located at the place of the natural waterway or place provided by the railroad company for the flow of the water, shall be borne by such railroad company without reimbursement therefor."

The statute is plain that, if the drainage improvement crosses the right of way at a point that is not the natural waterway, or not at a place where the railway company has provided for the passage of water, then the railway company is entitled to be reimbursed for the cost of constructing a bridge necessary to carry the drain across the right of way.   On the other hand,

if the drainage improvement is located at the point of natural waterway, or at the place provided by the railway company, then the railway company is not entitled to be reimbursed for constructing the bridge. It follows, therefore, that the question decisive of this case is, Was the bridge in question located at the point of the natural waterway? The railroad company had never maintained an opening through its embankment at the point where the ditch went through. At that point, the railway grade was some three or four feet high. For many years prior to the establishment of the drainage district, the railway company had maintained a permanent bridge where the Jackson Ditch crossed its right of way.

The controversy may be briefly stated thus: Plaintiff contends that the Jackson Ditch is the natural waterway. Defendants contend that the Jackson Ditch is an artificial ditch, located on higher ground than the natural surface where the new ditch crosses, and that the lower ground,—a swale or natural depression, where the new ditch is located,—is the natural waterway. The evidence of both parties shows without dispute that the Jackson Ditch does not run along the lowest surface levels of the land. The evidence shows that it does not follow in its course the natural surface slope, but cuts across such slope. The Jackson Ditch is in what is known as the Jackson 40. The Jackson 40 slopes to the south and east, toward the southeast corner of the 40. The 40 lying east of the Jackson 40, known in the record as the Miller 40, slopes to the south and west: that is, toward the southwest corner of said 40. Both 40's slope toward their corners where the drainage ditch crosses the railroad. The ground levels testified to by plaintiff's engineer show that the ground rises from the west side of the drainage ditch toward the west to the Jackson Ditch, and on west of the Jackson Ditch; that, 500 feet west of the new ditch, the ground is a foot and three tenths higher than at the new ditch. Also, the testimony of plaintiff's engineer shows that the ground rises from the east edge of the new ditch eastward; that, 600 feet east of the new ditch, the ground is two feet and seven-tenths inches higher than at the ditch. The testimony of defendants' engineer shows practically the same levels, and that, going both east and west from the new ditch, the surface levels rise. The

testimony of a number of witnesses who have, for many years, observed the flowage of water on the lands lying on either side of the new ditch, is to the effect that the waters coursed toward the place where the new ditch now crosses the railroad, and points out that the new ditch is constructed at the place of the natural flowage of surface water. These witnesses testified that, before the new ditch was constructed, the surface waters collected at the place where the ditch is constructed aross the right of way, and would stand there from a foot to fourteen inches deep until it seeped away; that cornstalks, straw, and other flotsam would collect at the point where the new ditch crosses the railway, and not at the Jackson Ditch; that, when the land was flooded by rains, the water was deepest at the corner where the new ditch was later constructed. The evidence shows that the Jackson Ditch did not afford effective drainage of land lying east of it. It is clear from the testimony of the engineers and other witnesses that the natural place for the flowage of water across the right of way of plaintiff's railroad is where the new drainage ditch is located. The land is quite flat,—such land as requires drainage. It is true that, before the ditch was constructed, there was in its present location no definite channel evidenced by erosion; but the undisputed evidence shows that there was a swale or broad depression, such as is commonly found where the surface contour is generally flat.

We reach the conclusion that the undisputed facts show that the drainage ditch was located across plaintiff's right of way at the natural waterway, and that the cost of constructing or maintaining the necessary bridge across the ditch is not an element of damage for which plaintiff can recover; nor can plaintiff recover for right of way. Under the record, it was not error to overrule plaintiff's motion for a verdict, and to direct verdict for defendants. The judgment of the trial court is— *Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.