# IN THE SUPREME COURT OF IOWA

No. 11–1637

Filed February 1, 2013

HARDIN COUNTY DRAINAGE
DISTRICT 55, DIVISION 3,
LATERAL 10,

     Appellee,

vs.

UNION PACIFIC RAILROAD
COMPANY,

     Appellant.

---

Appeal from the Iowa District Court for Hardin County, Kurt J. Stoebe, Judge.

A railroad appeals from a decision of the district court ordering it to pay for the costs of replacing a collapsed clay drainage tile under its roadbed and related damages and attorney fees. **DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR DISMISSAL.**

Bruce E. Johnson of Cutler Law Firm, P.C., West Des Moines, for appellant.

Michael A. Smith and Shean D. Fletchall of Craig, Smith & Cutler, LLP, Eldora, for appellee.

**ZAGER, Justice**.

In this appeal, we must determine under Iowa's laws relating to drainage districts, who is responsible for the costs to repair and improve old underground drainage tiles which run under a railroad roadbed. Hardin County Drainage District 55 (Hardin County) argues that the Union Pacific Railroad Company (Union Pacific) should be responsible for repair of a subterranean drainage tile found under its roadbed, as railroads are statutorily required to pay for the construction and maintenance of culverts and bridges occurring at natural waterways on the railroad's right-of-way. Union Pacific counters that underground drainage tiles are not "culverts" as defined by the relevant statute.

The district court agreed with the drainage district, finding the railroad breached its statutory duty to repair the drainage tile. For the reasons set forth below, we disagree, finding the drainage tile does not fit the statutory definition of a culvert obligating the railroad to pay for the necessary repairs. We therefore reverse the judgment of the district court and remand the case to the district court for dismissal.

## I. Factual Background and Procedural History.

Due to ancient glacier activity, much of north central and northwest Iowa consists of land that simply does not drain well. Up until drainage systems were installed, the land was either very wet or consisted of swamps. In order to transform these lands into the productive farm land that exists today, farmers began tiling their fields to allow subsurface drainage. As early as the turn of the century, the Iowa legislature recognized that in order to efficiently handle the administration of drainage, a statutory scheme was necessary. What resulted was Iowa Code chapter 468, entitled Levee and Drainage Districts and Improvements.

The railroad was built in Hardin County in 1910. Drainage District 55 was likely established between 1915 and 1920 in Hardin County. Drainage districts are divided into divisions and further broken down by laterals. The one in issue here is the Lateral 10 tile line, which became a part of Drainage District 55 in 1917. This lateral serves approximately forty-four landowners, and the tile in question services between 560 and 580 acres of farmland. This tile carries both surface and subsurface water from the west side of the railroad tracks to the east side.

In the spring of 2007, workers for Union Pacific noticed a void in the roadbed under its tracks. In compliance with federal railroad safety regulations, Union Pacific workers repaired the railroad bed by adding rock ballast to fill the void. The rock caused the already damaged drain tile to become plugged, thereby preventing drainage and causing flooding to farmland on the west side of the roadbed.

It is estimated that the clay underground drainage tile that is at issue in this case was installed around 1914, so it has been in use for nearly a century. It is also thought to have been originally installed by one of the adjacent landowners, not the railroad. It is likely there are hundreds of these underground drainage tiles that cross the Union Pacific railroad bed in Hardin County alone. There are no records as to the location of these drainage tiles. Additionally, this particular drainage tile was located 6.62 feet below the bottom of the ditch on the west side of the railroad bed. Union Pacific claims it had no knowledge of the existence of this drain tile, and it is not visible from an inspection of the area. There is a railroad culvert carrying surface water from the west side of the roadbed through to the east side located not far from the disputed drain tile.

On April 12, 2007, the drainage district provided Union Pacific with the statutory notice under Iowa Code section 468.109 requiring the railroad to rebuild and reconstruct the damaged tile. It was initially difficult to discuss this repair with Union Pacific. However, it was later determined by the drainage district that the existing tile line had insufficient capacity to drain the land it served, even in good repair, so it decided to replace the existing fourteen-inch drain tile with a twenty-one inch inside-diameter carrier pipe enclosed within a twenty-eight inch steel carrier pipe. While Union Pacific did not object to the proposed repair or replacement, it consistently denied that it was statutorily obligated to pay for it.

After completion of the repairs and improvements, Union Pacific refused to pay the drainage district. As a result, the drainage district filed a petition at law claiming the railroad breached its statutory duty to repair; was negligent in its failure to discover the drainage tile; was negligent in its ballast repair, which caused further damage to the drain tile and resulted in crop loss; and claimed further relief. The matter was tried to the court. A decree was entered by the court on July 18, 2011. In its order, the court awarded damages to the drainage district in the amount of $47,871 for the costs of the construction, $3055 for permit fees, $16,788 for surveying, engineering and construction observation, and $300.64 for administration and publication costs. Additionally, the district court entered judgment against Union Pacific on a negligence theory for crop loss in the amount of $22,402, and attorney fees of $21,553.46. After timely posttrial motions were denied, Union Pacific appealed. We retained the case.

## II.  Standard of Review.

The case was tried at law, and thus, the scope of review is for errors at law.  Iowa R. App. P. 6.907 (2009); *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001) ("Generally, we will hear a case on appeal in the same manner in which it was tried in the district court.").[1]  Under this standard of review, "[t]he trial court's findings carry the force of a special verdict and are binding on us if supported by substantial evidence." *Johnson*, 637 N.W.2d at 177.  We are not, however, bound by the trial court's legal conclusions.  *Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 575 (Iowa 2004).  To the extent that key questions in this appeal involve statutory construction, our review is for correction of legal error.  *Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 370 (Iowa 2012).

## III.  Statutory Framework.

Iowa Code chapter 468 governs the creation and function of drainage districts.  The purpose of drainage districts is to build and maintain drainage improvements that provide for the "drainage and improvement of agricultural and other lands, thereby making them tillable or suitable for profitable use." *Chi., M. & St. P. Ry. v. Mosquito Drainage Dist.*, 190 Iowa 162, 162, 180 N.W. 170, 170 (1920).  "The drainage of surface waters from agricultural lands . . . shall be presumed to be a public benefit and conducive to the public health, convenience, and welfare."  Iowa Code § 468.2 (2007).  To achieve this goal, counties may "establish a drainage district and . . . construct whatever [drainage improvement] is necessary for the public health, convenience, or

---

[1]Even though the district court's decision was captioned as a "Decree," the entire procedural framework was as an action at law, and no one has argued it was not tried as a law action.

welfare." *Hicks v. Franklin Cnty. Auditor*, 514 N.W.2d 431, 435 (Iowa 1994) (citing Iowa Code § 468.1).

Once a drainage improvement has been installed, it will eventually need to be repaired. Section 468.126 requires the board of supervisors to keep the improvement in repair in the following manner:

> The board at any time on its own motion, without notice, may order done whatever is necessary to restore or maintain a drainage . . . improvement in its original efficiency or capacity, and for that purpose may remove silt and debris, [or] repair any damaged structures . . . .

Iowa Code § 468.126(1)(*a*).

The board is also allowed to consider replacing a tile line rather than repairing a tile line, if laying a new tile line would be "more economical." *Id.* § 468.126(1)(*b*). Instead of repairing an old improvement, the board may elect to construct a new improvement, so long as more rigorous procedural requirements are met. *Id.* § 468.126(4). The costs of repairs or new improvements must be paid from the funds of the drainage district. *Id.* § 468.127. If there are insufficient funds on hand, "the board within two years shall levy an assessment sufficient to pay the outstanding indebtedness and leave the balance which the board determines is desirable as a sinking fund to pay maintenance and repair expenses." *Id.*

Drainage district improvements must necessarily cross railroad rights-of-way. Sections 469.109 to 468.112 address how the cost of these intersections will be allocated between the district and the railroad. *See Chi. & N.W. Transp. Co. v. Webster Cnty. Bd. of Supervisors*, 880 F. Supp. 1290, 1295 (N.D. Iowa), *aff'd*, 71 F.3d 265 (8th Cir. 1995). When a proposed improvement crosses a right-of-way, section 468.109 requires the county auditor to serve notice on the railroad, indicating both the

location of the improvement and the plans for how the improvement will cross the right-of-way. Iowa Code § 468.109; *Chi. & N.W. Transp. Co.*, 880 F. Supp. at 1295. The railroad company is then directed

> to construct such improvement according to said plans and specifications at the place designated, across its right-of-way, and to build and construct or rebuild and reconstruct the necessary culvert or bridge where any ditch, drain, or watercourse crosses its right of way, so as not to obstruct, impede, or interfere with the free flow of the water therein, within thirty days from the time of the service of such notice upon it.

Iowa Code § 468.109. The construction must be done "according to the plans and specifications prepared by the engineer" of the drainage district and must be done within the time specified. *Id.* § 468.110. Should the railroad fail to construct the culvert or bridge within thirty days, the board may construct the intersection itself and collect the costs, including any necessary attorney's fees, from the railroad. *Id.* §§ 468.109, .112.

If the culvert or bridge that is needed at the intersection is located at a natural waterway or a place provided by the railroad, then the cost of the bridge or culvert must be borne by the railroad without reimbursement from the drainage district. *Id.* § 468.111. Our statutory scheme favors levees, ditches, and drains to be placed along the "general course of the natural streams and watercourses or in the general course of natural drainage of the lands." *Id.* § 468.4. If the culvert or bridge is not at a natural watercourse or a place chosen by the railroad, then the railroad must be reimbursed for the cost of the construction ordered by the district in the notice provided in section 468.109. *See Chi., R.I. & P. Ry. v. Bd. of Supervisors*, 194 N.W. 266, 268 (1923). While the railroad is not reimbursed for whatever costs it incurs in constructing such a bridge or culvert, it must be reimbursed for any costs it incurs in constructing

other improvements that are ordered by the district under sections 468.109 to 468.112.

Our analysis then centers on two issues. First, we must determine whether the tile in question is a culvert within the meaning of chapter 468. If we make the determination that it is a culvert, we must then determine whether this was a "natural waterway." If the tile is both a culvert and is located on a natural waterway or a place chosen by the railroad, it is the responsibility of Union Pacific to pay for repairs to the tile. Alternatively, if we find that the tile is not a culvert, or that it does not occur at a natural waterway or a place chosen by the railroad, the drainage district is obligated to pay for repairs to the tile.

This issue was presented to us recently. *See Chi. Cent. & Pac. R.R.,* 816 N.W.2d at 369–70. However, in *Chicago Central*, we declined to reach the issue because the plaintiff did not seek the appropriate remedy. *Id.* at 374 (holding that a mandamus action, not a claim for reimbursement, was the appropriate remedy for a railroad demanding that a drainage district repair an underground tile).

**IV. Analysis.**

**A. Statutory Construction.** At its heart, this case involves statutory construction. When approaching a statutory construction issue, we "begin . . . with a firm understanding of our task. It is only to determine the intent of the legislature." *Andover Volunteer Fire Dep't v. Grinnell Mut. Reins. Co.,* 787 N.W.2d 75, 81 (Iowa 2010). Additionally, "[w]e generally presume words contained in a statute are used in their ordinary and usual sense with the meaning commonly attributed to them." *Gregory v. Second Injury Fund,* 777 N.W.2d 395, 399 (Iowa 2010). "In discerning the meaning of an ambiguous provision, we construe

terms according to their accepted usage when they are not defined in the statute." *Id.*

We also examine statutory language holistically.

> To ascertain the legislature's intent, we will assess the statute in its entirety, not just isolated words or phrases, and we will seek to interpret it so that no part of it is rendered redundant or irrelevant. We strive for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. . . .

> Legislative intent is ascertained not only from the language used but also from the statute's subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.

*State v. McCullah*, 787 N.W.2d 90, 94–95 (Iowa 2010) (citations and internal quotation marks omitted).

**B. Intent of the Legislature**.

1. *What the legislature intended to accomplish.* We do not interpret words or phrases in a vacuum. In order to determine what the legislature intended to be considered a culvert, we must begin with an analysis of what the legislature intended to accomplish with its statutory scheme. Chapter 468 is designed to encourage the "drainage of surface waters from agricultural lands and all other lands." Iowa Code § 468.2(1). As noted above, the primary responsibility for this belongs to the drainage districts. *Id.* § 468.1. Here, we are presented with a drainage tile of unknown origin, maintained in order to drain surface and subterranean water for agricultural purposes. The railroad is responsible for constructing or repairing culverts and bridges where the railroad's presence obstructs the natural flow of water. *Id.* § 468.111.

We are mindful of the entire statutory scheme the legislature imposed when determining the intent of the legislature. *See McCullah*,

787 N.W.2d at 94. Hardin County argues the railroad should repair any drainage structure that is located at or under its right-of-way. We do not believe this is what the legislature intended. It is reasonable to require a railroad to bear the initial expense of constructing or reconstructing structures such as culverts and bridges, to maintain the natural flow of water through its roadbed. It is equally reasonable to require the railroad to keep these culverts and bridges in proper repair to allow the natural flow of water. Iowa Code § 468.111. The legislature clearly intended that the railroad bear the expense of ensuring that water would continue as it would without the obstruction of a railroad. *See id.* § 468.111. However, this responsibility is limited by statute to culverts and bridges. *Id.* §§ 468.111, .113. This also makes sense, as the railroad should not be responsible for artificial underground drainage improvements that would be needed whether the railroad was there or not. The costs of these repairs are, by statute, the responsibility of the drainage districts. *Id.* § 468.126. The statutory scheme described above supports this conclusion. It gives primary responsibility to the drainage district for the repair, maintenance, and improvement of the drainage systems under its control. On the other hand, it gives the railroad responsibility for constructing, reconstructing, and maintaining the culverts and bridges which cross its roadbeds. *See id.* § 468.126; *id.* § 468.109.

Our prior caselaw supports this allocation of financial responsibility as well in a situation not governed by this statute. "If waters that do not belong there are brought upon that area, [and] it is not shown to have been through any act or fault of [the defendant railroad company], [the defendant railroad company] cannot be held

responsible for it." *Hinkle v. Chi., R.I. & P. Ry.*, 227 N.W. 419, 420 (1929).

2. *Definition of a culvert.* Chapter 468 provides several definitions to aid in statutory interpretation, but it does not include a definition of the word "culvert." Iowa Code § 468.3. The dictionary defines culvert as "a transverse drain or waterway (as under a road, railroad, or canal)." *Webster's Third New International Dictionary* 553 (unabr. ed. 2002). In an unpublished decision, our court of appeals examined a similar issue in the context of drainage ditches and found multiple definitions of the word "culvert" that included the word "drain." *Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors*, No. 10–0061, 2010 WL 4484202, at *5 (Iowa Ct. App. 2010), *aff'd*, 816 N.W.2d 367 (Iowa 2012) (providing multiple definitions of the word "culvert"). Similarly, the U.S. Department of Transportation publishes a *Culvert Inspection Manual* that the district court admitted into evidence. The definition provided there indicates a culvert is "[a] drainage opening beneath an embankment, usually a pipe, designed to flow according to open channel equation." Like the other definitions that include the word "drain," it indicates that a culvert is a very specific type of drain.

Iowa Code Chapter 468 uses both terms—"drain" and "culvert." The fact that our legislature uses the term "drain," particularly in the context of the railroad, demonstrates that it understood that drains, such as the drainage tile in question, regularly crossed railroad rights-of-way. *See, e.g.,* Iowa Code § 468.5 ("When any such ditch or drain crosses any railroad right-of-way. . ."); *id.* § 468.109 (listing "levee, ditch, drain, or watercourse" as forms of water transportation). The dictionary defines drain as "[a]n artificial channel by means of which liquid or other

matter is drained or carried off." *Webster's Third New International Dictionary* 685 (unabr. ed. 2002).

In contrast to a very general dictionary definition, Union Pacific presented testimony from Mark McCune, the railroad's Director of Structures Design, as to the definition of a culvert recognized in the field of railroad engineering. He testified that a culvert's function is to "provide passage from one side of the railroad embankment to the other, normally for water." Additionally, he testified that each end of a culvert opens to the air. In contrast, the drainage tile at issue here is part of a larger system of tiles that does *not* open to the air. Further, McCune testified that the American Railway Engineering and Maintenance-of-Way Association (AREMA) publishes a technical manual that indicates the technical definition of culvert in the railroad context excludes subsurface water. Specifically, it refers to a culvert as "being an enclosed channel substituted for an open waterway."

Hydrologist Chris Vokt presented a very similar definition. After being asked about the technical definition of a culvert, he testified, "Culverts typically found under railroads and roads, open both ends. And the culverts are open to the air. They pass surface to surface runoff, and they typically just extend from one side of the embankment to the other." Here, of course, the drainage tile specifically exists to drain subsurface waters and does not function in the manner in which a culvert is by definition intended to function.

While not dispositive, the legislature has defined culverts in another context. As used in the highway context, the Code defines a culvert to

> include[] any structure not classified as a bridge which provides an opening under the roadway, except that this term does not include tile crossing the road, or intakes

thereto, where tile is part of a tile line or system designed to aid subsurface drainage.

Iowa Code § 309.1(3).

The legislature has also discussed the responsibility for railroad crossings in other contexts. Iowa Code section 327F.2 provides that "[e]very railroad company shall build, maintain, and keep in good repair all bridges, abutments, or other construction necessary to enable it to cross over or under any canal, watercourse. . . ." Finally, Iowa Code section 476.27 requires other public and/or government utilities to be responsible for costs of construction and maintenance of underground pipe railroad crossings. If the legislature had intended Iowa Code section 468.111 to apply to all drains, it would have simply used the word "drain" rather than culvert or bridge. It used the word "drain" in other sections of the chapter, including in the context of railroads. Additionally, the more specific definition of culvert does not apply to the drainage tile in question. Based upon the plain definition of a culvert, and the language and structure of the legislation, we conclude that the drainage tile is *not* a culvert in the context of Iowa Code section 468.111.

Because we reach the conclusion that the drainage tile is not a culvert, we need not reach the remaining issue of whether the drainage tile occurs at a natural waterway or in a place chosen by the railroad. The railroad is not responsible for the repairs to this drainage tile or the other related damages. Additionally, based on our decision, we need not reach the other issues raised by the parties on appeal.

**V. Disposition.**

For the reasons stated above, we hold the railroad is not statutorily obligated to pay for repairs or improvements to the subterranean

drainage tile at issue.  We reverse the judgment of the district court and remand for entry of an order dismissing this case with prejudice.

**DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR DISMISSAL.**