**IN THE COURT OF APPEALS OF IOWA**

No. 13-0332
Filed October 15, 2014

**DAVID A. ASCHLIMAN,**
    Plaintiff-Appellant,

**vs.**

**RODNEY HETTINGER,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Clayton County, Margaret Lingreen, Judge.

David Aschliman appeals from the trial court's decision upholding a real estate contract entered into between Rodney Hettinger and Edward and Frank Gibbs. **AFFIRMED.**

Peter Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Kathleen Neylan, of Neylan Law Office, Elkader, for appellee.

Heard by Vaitheswaran, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

David Aschliman appeals a judgment decree and order adverse to him and in favor of Rodney Hettinger in this real estate dispute. We affirm the judgment of the district court.

I.

The record reflects the following facts. Aschliman was an officer and manager of Farmers Implement, Inc., a Wisconsin business involved in the sale, rent, and service of farm equipment. Hettinger was a farmer in Clayton County, Iowa, involved in the production and sale of grain and livestock. Brothers Edward and Frank Gibbs owned farmland in Allamakee and Clayton Counties.

In 2003, the Gibbses, along with James Sparrgrove, the son of a family friend, established a dairy farm operation. Sparrgrove managed the day-to-day farm operations. In 2004, the Gibbses started doing business with Aschliman and Farmers Implement. In 2007, Sparrgrove and the Gibbses hired Hettinger to do custom farm work. In late 2007, Farmers Implement loaned money to the Gibbses and received as security a mortgage on certain land in Allamakee County owned by the Gibbses.

By 2009, the Gibbses owed Hettinger money as payment for Hettinger's custom farm work. Hettinger became increasingly concerned the Gibbses would not be able to satisfy this obligation. To resolve the indebtedness, the parties reached an agreement in which Hettinger would purchase farmland from the Gibbses with part of the consideration coming in the form of debt forgiveness. Although it was Sparrgrove and Hettinger who hammered out the terms of the agreement, the agreement itself was signed by Hettinger and the Gibbses.

Subsequent to the signing of these contracts, Hettinger learned that Dubuque Bank & Trust (hereinafter "Bank"), which also held a mortgage against certain Gibbses' property, had initiated foreclosure proceedings involving the property that was subject of the Hettinger-Gibbses contract. On or about July 16, 2009, Hettinger contacted Aschliman and encouraged him to purchase the Bank's interest in the property with the hope that Aschliman would not impede the agreement Hettinger had with the Gibbses. Aschliman was not interested in purchasing the Bank's interest. Instead, on or about August 13, 2009, Aschliman offered to purchase approximately 234 acres directly from the Gibbses. Included within the 234 acres was approximately 85 acres also included in the purchase agreements between Hettinger and the Gibbses.

Sometime prior to the completion of the Gibbses' sale to Aschliman, Hettinger filed an affidavit with the Clayton County Recorder and attached to that affidavit signed copies of the agreements he had entered into with the Gibbses. The affidavit was recorded on August 19, 2009. The affidavit appeared in the abstract of title prepared in contemplation of Aschliman's purchase from the Gibbses; however, Aschliman's attorney did not make any mention of it when examining the abstract for purposes of preparing a title opinion. On August 18, 2009, the day before the affidavit was filed, Gary Wegmann, the realtor listing the bulk of the Gibbses' land for sale, contacted Aschliman by email and informed him of Hettinger's contracts with the Gibbses. Nonetheless, Aschliman closed his transaction with the Gibbses on August 26, 2009. Dubuque Bank & Trust's claims were satisfied with the proceeds from the Aschliman transaction.

On August 28, 2009, Hettinger commenced an action for specific performance and quiet title against the Gibbses (hereinafter "Hettinger Suit"). Several days later, around September 1, 2009, Hettinger, who was also renting the 85 disputed acres from the Gibbses prior to reaching an agreement to purchase the same, received notice from Aschliman that Hettinger's lease from the Gibbses was being terminated by Aschliman. On September 21, 2009, Aschliman filed an appearance and motion to intervene in the Hettinger Suit. While Aschliman's motion to intervene was still pending, default and default judgment was entered against the Gibbses. The district court quieted title in favor of Hettinger and against the Gibbses and directed the Gibbses to perform the real estate contract with Hettinger. Several days later, on October 13, 2009, the court granted Aschliman's motion to intervene. Aschliman then filed a counterclaim against Hettinger and asserted affirmative defenses, which the district court dismissed as being premature until the default judgment was vacated, if ever. Almost one year later, on September 16, 2010, the Gibbses assigned their rights in the litigation to Aschliman. On September 28, 2010, Aschliman then filed a petition to vacate, correct, or modify the default judgment as an assignee of the Gibbses' interest in the Hettinger suit. Aschliman's petition to vacate the default judgment has never been ruled upon.

Instead of requesting a ruling on the petition to vacate the default judgment in the Hettinger Suit, Aschliman initiated this quiet title and declaratory judgment action against Hettinger (hereinafter "Aschliman Suit"). Hettinger filed counterclaims in the Aschliman Suit for intentional interference with the contract between Hettinger and the Gibbses, conversion related to payments from the

United States Department of Agriculture made to Aschliman instead of Hettinger, intentional infliction of emotional distress, slander of title, fraudulent conveyance, and defamation.  Following a bench trial, the district court dismissed Ashcliman's quiet title claim and declaratory judgment claim.  The district court concluded, however, that Aschliman was entitled to an equitable lien on the disputed 85 acres, representing the benefit Hettinger received when Aschliman satisfied the Gibbses' obligations to Dubuque Bank & Trust.  The district court dismissed Hettingers counterclaims for slander of title, intentional infliction of emotional distress, defamation, and fraudulent conveyance.  The district court did enter judgment in favor of Hettinger, however, for his claims of intentional interference with contract and conversion.  Aschliman appeals this judgment decree and order.

II.

We first address Aschliman's claims against Hettinger.  These claims were tried in equity.  Our review of equitable actions is de novo.  *See* Iowa R. App. P. 6.907.  "In our de novo review we examine the whole record, find our own facts, and adjudicate rights anew on issues properly before us." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 629 (Iowa 1996).  "We give respectful consideration to the district court's fact findings, especially when witness credibility is an issue, but we are not bound by those facts." *Id.*

Although Aschliman strongly resists the characterization, his quiet title and declaratory judgment action were collateral attacks on Hettinger's contract with the Gibbses.  With respect to that issue, Hettinger has obtained default judgment against the Gibbses, which is a final judgment.  *See Snyder v. Allamakee Cnty.*,

402 N.W.2d 416, 418 (Iowa 1987). As an assignee of the Gibbses' interest in the Hettinger Suit and as an intervenor in the Hettinger Suit, Aschliman's means to litigate the merits of that contract were through motion practice or appeal in the Hettinger Suit. As of now, Aschliman has not availed himself of those remedies. As such, the validity of the contract between Hettinger and the Gibbses is established and Aschliman cannot attack it in this way. Independently, we agree with the district court that Aschliman did not prove the Hettinger-Gibbs agreement was procured by fraud or otherwise invalid.

Even if Aschliman were entitled to collaterally attack the Hettinger-Gibbses contract to establish superior title as between himself and Hettinger, Aschliman's claim fails on the merits because he is not a bona fide purchaser. "A bona fide purchaser is one who takes a conveyance of real estate in good faith from the holder of legal title, paying a valuable consideration for it without notice of outstanding equities." *Raub v. Gen. Income Sponsors of Iowa, Inc.*, 176 N.W.2d 216, 219 (Iowa 1970). "[S]uch a purchaser takes title divested of such equities . . . ." *Id.* To establish he was a bona fide purchaser for value, Aschliman must show he purchased the property from the Gibbses without constructive or actual notice of Hettinger's claim. *See Anderson*, 551 N.W.2d at 637.

We agree with the trial court's findings and conclusions that Aschliman had constructive notice of Hettinger's claims. Here, Hettinger recorded his agreement with the Gibbses at the recorder's office. The agreement was noted in the title work of Aschliman's deal with the Gibbses, but no action was taken.

Nonetheless, "[c]ompliance with the recording statutes affords constructive notice of . . . existing rights." *Id.*

We also agree with the trial court's findings and conclusions that Aschliman had actual notice of Hettinger's claims. "Actual notice depends upon the purchaser having either (1) actual knowledge of the existing rights, or (2) knowledge of sufficient facts to charge the purchaser with a duty to make inquiry that would reveal the existence of such rights." *Id.*

> It is a well settled general rule, in determining whether a purchaser had notice of outstanding equities or unrecorded interests so as to preclude [the purchaser] from being entitled to protection as a bona fide purchaser, that if [the purchaser] has knowledge of circumstances which, in the exercise of common reason and prudence, ought to put a [person] upon particular inquiry, he will be presumed to have made inquiry, and will be charged with notice of every fact which such suggested investigation would in all probability have disclosed had it been properly pursued. The purchaser may not act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of the inquiry is naturally suggested by circumstances known to him.

*Id.* at 637-38 (alterations in original) (citation omitted). Here, Aschliman admitted that eight days prior to closing on his own contract with the Gibbses he was informed via email of Hettinger's contract with the Gibbses. This is sufficient to constitute actual notice to Aschliman. *See Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886-87 (Iowa 1981) (finding an individual who was informed by a real estate agent that another party had a claim to ownership of the subject property had "actual notice" so as to defeat individual's claim of being a bona fide purchaser).

Although the district court dismissed Aschliman's quiet title and declaratory judgment actions, Aschliman sought and was granted an equitable

lien on the 85 acres. "An equitable lien is a restitution concept applied by courts of equity to avoid injustice." *Nachazel v. Mira Co., Mfg.*, 466 N.W.2d 248, 253 (Iowa 1991). On appeal, Aschliman argues the court erred in determining the amount of his equitable lien.

When Aschliman purchased land from the Gibbses, his payment satisfied various liens and encumbrances on the property. By quieting title and being granted specific performance of the disputed 85 acres, Hettinger received the benefit of Aschliman's payment of outstanding encumbrances. Because Aschliman's purchase price was $608,400 for the 234 acres, or $2600 per acre, the trial court determined Hettinger received a benefit of $221,000. Aschliman argues the disputed 85 acres were worth substantially more than $2600 per acre, while Hettinger argues the trial court erred in imposing an equitable lien. On our de novo review, we agree with the trial court's recommendation of $221,000 as it does justice between the parties.

## III.

We next address Hettinger's claims against Aschliman. Aschliman contends there was insufficient evidence to prove he interfered with Hettinger's contracts or that he converted Hettinger's property. Because these claims were tried at law to the district court, our scope of review is for correction of errors at law. *See Hardin Cnty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R. Co.*, 826 N.W.2d 507, 510 (Iowa 2013). The trial court's findings are binding on us if supported by substantial evidence. *See id.*

Aschliman's contention regarding interference is based solely on his claim Hettinger's contracts are invalid. The elements of the tort of intentional interference with an existing contract are:

> (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.

*Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 243 (Iowa 2006) (citation omitted). The district court found the contracts between Hettinger and the Gibbses were valid. In the Hettinger Suit, the court ordered specific performance of the same. The district court also found that Hettinger suffered losses of $10,626 from not being able to farm the 85 tillable acres for the 2010 crop year and $5000 from the loss of value of bales that Hettinger was prevented from retrieving in a timely manner. The district court's findings are supported by substantial evidence.

Aschliman also contends his actions in interfering with Hettinger's contracts were made in good faith and thus prevent a finding of conversion. Conversion is "the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Whalen v. Connelly*, 621 N.W.2d 681, 687 (Iowa 2000) (citation omitted). "Conversion only requires intentional dispossession; it does not contemplate the actor's motivation." *State v. Hollinrake*, 608 N.W.2d 806, 809 (Iowa Ct. App. 2000). Here, there was substantial evidence that Aschliman wrongfully asserted dominion and control over the federal payments due Hettinger in the amount of $5483.

IV.

In sum, after review and consideration of the parties' arguments, whether discussed explicitly above, we affirm the well-reasoned and thorough order of the district court. With respect to Aschliman's claims, on de novo review, we affirm the district court's findings and conclusions and adopt them as our own. With respect to Hettinger's claims, we conclude the district court's findings are supported by substantial evidence and the district court did not err. We decline Hettinger's request to award appellate attorney fees. Costs shall be assessed to Aschliman. The judgment of the district court is affirmed.

**AFFIRMED.**