**IN THE COURT OF APPEALS OF IOWA**

No. 17-0884
Filed May 2, 2018

**IN THE MATTER OF C.C.,**
**Alleged to Be a Person with a Substance-Related Disorder,**

**C.C.,**
　　　　Appellant.
_____

　　　　Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.


　　　　C.C. appeals from the district court order finding he is a person with a substance-related disorder and placing him in outpatient treatment pursuant to Iowa Code chapter 125 (2017). **AFFIRMED.**


　　　　Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant.

　　　　Thomas J. Miller, Attorney General, and Gretchen Kraemer, Special Assistant Attorney General, for appellee State.


　　　　Heard by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

C.C. appeals from the district court order finding he is a person with a substance-related disorder and placing him in outpatient treatment pursuant to Iowa Code chapter 125 (2017). He contends the application should have been dismissed because a commitment hearing was not held within five days of the court's order for immediate custody in violation of Iowa Code section 125.81. He also claims his counsel provided ineffective assistance by stipulating that he is a person with a substance-related disorder.

**I. Background Facts and Proceedings.**

On April 21, 2017, an application alleging C.C. to be a person with a substance-related disorder was filed in the district court. The application alleged that C.C. has a "[h]istory of drug use as evidenced by recent irrational & delusional behavior" and stated C.C. was using methamphetamine. The application requested that C.C. be taken into immediate custody and brought to a hospital for evaluation. An affidavit filed in support of the application stated C.C. "uses meth & other drugs," "gets very agitated," and "exhibits harmful behavior." Specifically, the affidavit alleged that C.C. had thrown a hammer at his wife, carried a machete around, threatened to kill himself and others, threatened to burn down his house, destroyed household items, and smashed walls, doors, furniture, and windows.

On the same day the application was filed, the district court entered an order for immediate custody. The order provided that C.C. could be discharged following the physician's examination if the physician concluded C.C. was not likely to harm himself or others if discharged. The court also scheduled a commitment hearing for April 27.

On April 21, a deputy sheriff took C.C. into custody and transported him to a medical facility. C.C. underwent an examination on April 22. The physician's report of examination, which was filed on April 24, diagnosed C.C. with a substance-related disorder and found C.C. was likely to injure himself or others if allowed to remain at liberty without treatment, citing his history of domestic abuse. However, the report also found C.C. did not present an "imminent risk" and could be released to the custody of a relative or friend and evaluated on an outpatient basis. The report recommended C.C. complete the scheduled substance-abuse evaluation and follow through with the recommended treatment.

The applicants failed to appear at the April 27 commitment hearing. The State requested a continuance, and C.C. moved to dismiss the application. The court granted the State's request and continued the hearing to May 4. The court's order noted C.C. had been discharged from the hospital and was no longer detained in custody.

On May 3, C.C. requested the court continue the hearing to allow him to obtain a second medical opinion on whether he met the criteria for commitment. The State consented to the continuance, and the court rescheduled the commitment hearing for May 18.

C.C.'s second examination was scheduled for May 16. Due to a work conflict, C.C. rescheduled the examination for May 22. Because the rescheduled examination would take place four days after the commitment hearing, C.C. again asked the court to continue the hearing. The State agreed to the continuance, and the court moved the hearing to May 25.

On May 22, C.C. again cancelled his examination. The next day, May 23, C.C.'s attorney moved to continue the commitment hearing, stating that C.C. had cancelled the examination because it conflicted with his work schedule but had scheduled a new examination for May 30. The State resisted the motion on the ground that C.C. "had ample opportunity to obtain a second opinion in the time allotted." Following an unreported hearing, the court ordered C.C. to obtain testing for methamphetamine, marijuana, and opioids. If the test was negative for those substances, the court stated it would grant the continuance and set the hearing for June 1; if the test was positive for any of the substances, the hearing would proceed as scheduled on May 25.

On May 25, C.C.'s counsel filed a written waiver of C.C.'s presence at the commitment hearing, stating that C.C. could not afford to pay for the chemical test or to miss work to have the testing completed. The waiver states:

> [C.C.] concedes that although he disagrees, that the evidence will show that he meets the criteria to be under the court's supervision as a chronic substance abuser. In addition, he is willing to comply with the recommendations of the doctor's report as to his treatment. He therefore believes he has nothing more to add to the hearing and waives his presence.

C.C. did not sign the waiver.

Following the May 25 hearing, the court entered its commitment order, stating that the parties had stipulated to the statutory elements and that C.C. would undergo the recommended treatment. The court found C.C. to be a person with a substance-related disorder and ordered C.C. to comply with the treatment recommendations set forth in the physician's report of examination. C.C. appeals.

**II. Scope of Review.**

Because the proceeding is an ordinary action at law, our review is for correction of errors at law.  *See* Iowa R. App. P. 6.907; *In re Oseing*, 296 N.W.2d 797, 800-801 (Iowa 1980).

**III. Motion to Dismiss.**

C.C. first contends the district court erred by denying his April 27 motion to dismiss and instead continuing the commitment hearing until May 4.  He argues the court exceeded its authority by continuing the commitment hearing because the statute requires the court to hold a commitment hearing no more than five days after entering an order for immediate custody.

Iowa Code section 125.81(1) states:

> If a person filing an application requests that a respondent be taken into immediate custody, and the court upon reviewing the application and accompanying documentation, finds probable cause to believe that the respondent is a person with a substance-related disorder who is likely to injure the person or other persons if allowed to remain at liberty, the court may enter a written order directing that the respondent be taken into immediate custody by the sheriff, and be detained until the commitment hearing, which shall be held no more than five days after the date of the order . . . .

Because the court entered an order for immediate custody on April 21, C.C. argues section 125.81 prohibited the court from continuing the April 27 hearing.

The court's April 21 order stated that C.C. be taken into immediate custody under section 125.81 "*unless* the court-designated physician has completed the examination pursuant to section 125.80 and concludes that [C.C.] is not likely to injure himself . . . if discharged and otherwise does not require inpatient hospital treatment prior to the hearing." (emphasis added).  The physician's report of examination found that C.C. was not an imminent risk of harm to himself or others

and could be released to the custody of a relative or friend. C.C. was discharged sometime after the examination and before the hearing. Because C.C. was no longer in custody awaiting the hearing, the court concluded "that the provision of Iowa Code section 125.81(1) requiring the hearing to be held no later than five days after the custody order does not preclude continuance of the hearing."

No cases have interpreted the section 125.81 requirement that the court hold a commitment hearing within five days of entering an order for immediate custody. We therefore resort to the rules of statutory construction in an effort to ascertain the legislature's intent. *See Hardin Cty. Drainage Dist. 55 v. Union Pac. R.R. Co.*, 826 N.W.2d 507, 512 (Iowa 2013).

> To ascertain the legislature's intent, we will assess the statute in its entirety, not just isolated words or phrases, and we will seek to interpret it so that no part of it is rendered redundant or irrelevant. We strive for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. . . .
> Legislative intent is ascertained not only from the language used but also from the statute's subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.

*Id.* (alteration in original) (citation omitted).

We begin with the statute's text to determine whether an ambiguity exists. *See In re Marriage of Erpelding*, ___ N.W.2d ___, ___, 2018 WL 1122305, at *2 (Iowa 2018). If the statute is unambiguous, we need not search for meaning beyond its express terms. *See id.* Only when the statute is ambiguous do we consider the legislature's goal in enacting the legislation, the circumstances in which the legislation was enacted, the legislative history, and the consequences of a particular construction. *See id.*

A statute's words and phrases must be construed "according to the context and the approved usage of the language." Iowa Code § 4.1(38). Furthermore, "technical words and phrases" and those that have acquired a peculiar and appropriate meaning in law must be accorded such meaning. *Id.* When the legislature defines a term, its definition is binding. *See State v. Pettijohn*, 899 N.W.2d 1, 15 (Iowa 2017). We only deviate from these rules when they would lead to a construction that would be "inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute." Iowa Code § 4.1.

Section 125.81(1) sets out two prerequisite conditions: (1) the filing of an application requesting the respondent be taken into immediate custody and (2) a finding of probable cause to believe the respondent has a substance-related disorder and is likely to commit injury if allowed to remain at liberty. When both of these conditions are satisfied, the legislature confers a power on the court by stating it "*may* enter a written order directing that the respondent be taken into immediate custody . . . and be detained until the commitment hearing." *Id.* § 125.81(1) (emphasis added); *see also id.* § 4.1(30) (stating that the term "may" confers a power on the court). If the court exercises this power, the legislature then imposes a duty on it by stating a commitment hearing "*shall* be held no more than five days after the date of the order." *Id.* § 125.81(1) (emphasis added); *see also id.* § 4.1(30) (stating that the use of the word "shall" imposes a duty). Therefore, when the court exercises the power conferred by the legislature, the court is obligated to hold the commitment hearing within a time limit.

The district court found it was not obligated to hold a commitment hearing within five days of the order for immediate custody because C.C. was not in

custody. On April 21, the court ordered C.C. be taken into immediate custody but provided for C.C.'s discharge if the physician found he was not likely to hurt himself if discharged and otherwise did not require inpatient hospital treatment prior to the commitment hearing. Because the physician's report of examination determined C.C. could be released for outpatient treatment, he was not detained until the time of the commitment hearing. Section 125.81(1) imposes on the court a duty to hold the commitment hearing within five days if the court exercises its power to order the respondent be taken into immediate custody *and* detained until the time of the commitment hearing. Because C.C. was not detained after the physician's examination, the duty was not triggered.

The district court's interpretation of section 125.81(1) comports with chapter 125 as a whole. If a respondent is not placed in immediate custody and detained until the commitment hearing, the court shall schedule "a tentative time and place for a hearing, subject to the findings of the [physician's report of examination], but not less than forty-eight hours after notice to the respondent." *Id.* § 125.78(3)(a). Section 125.80(4) requires that if the report of the physician's examination states the respondent is a person with a substance-related disorder "the court shall schedule a commitment hearing *as soon as possible*" but "not more than forty-eight hours after the report is filed." (emphasis added). However, the legislature granted the court the power to make an exception if the respondent requests an extension or if the court finds "sufficient grounds exist for delaying the hearing." *Id.* § 125.80(4). Chapter 125 also grants the court the power to order "limited detention" of a respondent who is not taken into immediate custody but who refuses to be examined by a physician, *id.* § 125.80(1)(c), or if the court "finds good

cause to believe that the respondent is about to depart from the jurisdiction of the court" to prevent the respondent from doing so, *id.* § 125.82(5). Reading the statute as a whole, it is clear that the time period for holding a commitment hearing is most limited when the respondent is in custody awaiting the commitment hearing and that the court has flexibility to delay the commitment hearing for good cause when the respondent's liberty is not restrained. We concur in the district court's interpretation of section 125.81. Therefore, no error occurred when the district court denied C.C.'s motion to dismiss and continued the commitment hearing.

### IV. Ineffective Assistance of Counsel.

C.C. also argues his counsel provided ineffective assistance by stipulating that he meets the criteria for treatment under chapter 125.[1] We review his claim de novo. *See In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010). To succeed, C.C. must prove his counsel failed to perform an essential duty and this failure prejudiced him. *See id.* Failure to prove either element by a preponderance of the evidence is fatal to the claim. *See id.*

Involuntary commitment or treatment proceedings may be instituted against a person who presents a danger to self or others and who lacks judgmental capacity due to a substance-related disorder. *See* Iowa Code § 125.75(1)-(2)(a)(1). Chapter 125 defines a substance-related disorder as "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified

---

[1] Although the supreme court has not decided the issue definitively, we will assume a respondent in a proceeding under chapter 125 has the right to effective assistance of counsel. *See In re Detention of Willis*, 691 N.W.2d 726, 730 (Iowa 2005); *In re J.H.*, No. 12-1133, 2013 WL 1760183, at *2-3 (Iowa Ct. App. Apr. 24, 2013) (assuming the right to effective assistance of counsel exists for persons who are alleged to be seriously mentally impaired and facing involuntary civil commitment under Iowa Code chapter 229).

within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in a functional impairment." *Id.* § 125.2(14). The allegations must be proved by a preponderance of the evidence at a commitment hearing. *See id.* § 125.82(4). There is a presumption in favor of the respondent. *See id.*

The record shows that even if counsel had not stipulated that C.C. meets the criteria for treatment under chapter 125, the evidence would support such a finding. The physician's report of examination opines that C.C. is a person with a substance-related disorder and diagnoses C.C. with methamphetamine use disorder. The report further states that C.C.'s substance-abuse disorder meets the diagnostic criteria specified within the most current Diagnostic and Statistical Manual of Mental Disorders. Although the report found C.C. was not an "imminent risk" to himself or others, noting his purported willingness to complete a substance-abuse evaluation, the report did find that C.C. was likely to injure himself or others if allowed to remain at liberty without treatment. The only overt act listed in the report is C.C.'s history of domestic abuse, which C.C. argues is not recent. Regardless, the report's finding that C.C. was likely to injure himself or others if allowed to remain at liberty without treatment satisfies the "dangerousness" requirement for involuntary commitment or treatment. *See In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980) (noting this element "requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger'" (citation omitted)). Additionally, the application and accompanying affidavit submitted to the district court detail C.C.'s violent and

threatening behavior, including throwing a hammer at his wife, carrying a machete, and threatening to burn down his house.

The outcome of the proceedings would not have been different had counsel not stipulated that C.C. met the criteria for treatment. Therefore, C.C. cannot show he was prejudiced by any breach of counsel's duty in making the stipulation and his ineffective-assistance claim fails. We affirm.

**AFFIRMED.**