# IN THE COURT OF APPEALS OF IOWA

No. 23-1384
Filed February 5, 2025


**DEAN W. & PEGGY G. LEMKE JOINT REVOCABLE TRUST, DEAN W. LEMKE and PEGGY G. LEMKE, Trustees; HARLAN LAWRENCE LEMKE REVOCABLE LIVING TRUST, HARLAN LAWRENCE LEMKE, Co-Trustee and FRANCINE EMILY LEMKE, Co-Trustee and HARLAN LAWRENCE LEMKE, Co-Trustee; DALE and IRENE HACKBARTH FARMS, INC.; and DELORES J. BLACKFORD, Trustee of the DELORES J. BLACKFORD REVOCABLE TRUST,**
Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**FRANKLIN COUNTY BOARD OF SUPERVISORS, MIKE NOLTE, GARY MCVICKER, CHRIS VANNESS as Trustees of DRAINAGE DISTRICT NUMBER 48,**
Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Franklin County, Colleen Weiland, Judge.


Landowners appeal and the county board of supervisors cross-appeals the district court's award of damages to the landowners after a drainage ditch project.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**


Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellants/cross-appellees.

George A. Cady III of Cady & Rosenberg Law Firm, P.L.C., Hampton, for appellees/cross-appellants.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

Three groups of landowners in Franklin County Drainage District 48 brought claims for damages after a drainage ditch project harmed their field crossings. The Franklin County Board of Supervisors, acting as trustees for the district, denied their claims. The landowners appealed to the district court. After a trial on their claims, the court awarded the landowners damages for "landlocking" and "repair/stabilizing" but denied their requests to be reimbursed for the cost of replacing the crossings.

The landowners appeal, claiming the district court erred in failing to award them "the cost to restore their farm lands with reliable functional field crossings" that can handle the increased water flow from the drainage ditch project. The board cross-appeals, claiming the landowners are not entitled to any damages. We agree with the board, reverse the court's damage awards, and remand for dismissal of the landowners' petition.

## I.    Background Facts

Members of the Lemke family and their associated trusts; Dale and Irene Hackbarth Farms, Inc.; and the Delores J. Blackford Revocable Trust own land in Franklin County Drainage District 48. The drainage district was established in 1906 by the Franklin County Board of Supervisors, which acts as trustees for the district. The history of this drainage district was discussed by our supreme court in *Hicks v. Franklin County Auditor*, 514 N.W.2d 431 (Iowa 1994) and *Abbas v. Franklin County Board of Supervisors*, ___ N.W.3d ___, ___, No. 23-0958, 2025 WL 223427, at *2–3 (Iowa 2025).

The record in this case shows that a five-mile open ditch was constructed in the district after it was established in 1906. In 1916, the board replaced the northern three miles of the open ditch with a tile main that extended to 110th Street. The diameter of the outlet at 110th Street was thirty-two inches. The two miles south and downstream of 110th Street remained an open ditch. The land owned by the Lemkes, Hackbarths, and Blackfords is in that southern portion of the drainage district.

By the 1930s, the tile main in the northern three miles of the district had been filled in with enough dirt that the land was returned to crop production. The ditch was cleaned out in 1952. Photographs from the next year show that crossings over the ditch had been installed in the sections now owned by the Lemkes, Hackbarths, and Blackfords. The ditch was cleaned out again in 1983. Dean Lemke testified that as part of that project, his father and the prior owner of the Hackbarth farm allowed the board to remove two of their field crossings. In exchange, the board rebuilt a crossing to be shared by the otherwise landlocked farms. Lemke explained: "Pipes were reset at a lower elevation to match the cleanout elevation of the ditch, and the earth fill was replaced on top of it." The pipes were 48-inch diameter pieces of concrete that fit together to form a forty-foot-long culvert. Three to five feet of soil covered the culvert, and the crossing was twenty-five feet wide. According to an affidavit that Lemke submitted to the board, the district's engineer for the project in 1983 "advised the landowners that the new shared crossing would be permanently recorded on the [district] records

and plans, and would be maintained into perpetuity by [the district]."[1] But there were no records to that effect.

In 1991, the board constructed a surface drain over the tile in the northern three miles of the district, and the ditch was cleaned out again in 2000. During this period, Lemke testified the culvert at the shared crossing with the Hackbarths was "able to handle all the water discharged upstream." The 48-inch culvert at the Blackfords' field crossing also functioned well. Delores Blackford thought they had about eight feet of dirt on top of their culvert, which was "concrete with corrugated metal pipe[] extension[s]." Unlike the Lemkes and Hackbarths, the Blackfords' farm is not landlocked without the crossing.

The drainage situation for these downstream landowners changed with a project the board started in 2017 at the request of upstream landowners. According to the district's engineer, Lee Gallentine,

> The tile was in a state of disrepair. It was on uneven grade. It wasn't level. It wasn't meeting how it was originally designed and intended and probably installed. So the hope was at the upper end to get that [to] drain better, and by better, I mean, get to the point that those lands weren't saturated.

To achieve that result, the board removed the tile installed in 1916 and returned the northern three miles to an open ditch. The new ditch "was built a little deeper than the tile line and the side slopes were made flatter. So it would have had a

---

[1] The district court received this affidavit as an exhibit, subject to the board's hearsay objection "and with the stipulation that it would state the extent to which it relied on the exhibit." In its later ruling, the court stated: "The 'trade' of several crossings for one would have benefited the district and is consistent with other evidence, so I accept Lemke's assertion. The court finds less reliable the assertion that the district agreed to take on the obligation of repairing or maintaining the Lemke/Hackbarth crossing."

little more capacity than the original ditch in 1906." Any lateral tile lines that had been connected to the main tile were diverted into the open ditch. And three 54-inch diameter culverts at 110th Street were replaced with an eight-foot by eight-foot box culvert.

Lemke, who not only farmed his family's land but was also a drainage engineer, testified that the "hydrology of the system completely changed" after the 2017 project, resulting in "much higher flows immediately after" storm events. Two heavy rains in 2018 washed out and eroded both crossings. Since then, the Lemke/Hackbarth crossing is no longer usable. To get to the other side of their farms, they now have to travel three miles, which takes them about one hour with their farm equipment. Because the Blackfords added some dirt and rocks to stabilize their crossing, they have been able to use it with pickups and grain semis. But Delores testified, "we don't take the combine, anything wide, over it, because we're not so sure how stable it is."

## II.     Proceedings

The board received a completion report in September 2020 from its contractor for the project and set a hearing for the next month. *See* Iowa Code § 468.101 (2020). The landowners filed objections to the report before the hearing under Iowa Code section 468.102[2] and asked for "damages for their ditch field

_____

[2] This statute provides in part:

> Any interested party having a claim for damages arising out of the construction of the improvement or repair shall file said claim with the board at or before the time fixed for hearing on the completion of the contract, which claim shall not include any claim for land taken for right-of-way or for severance of land.

Iowa Code § 468.102.

crossing[s] not being replaced." The board appointed three appraisers to assess the damage. One of them was Gallentine, the district engineer who designed the 2017 ditch project; the other two were farmers in the county. The appraisers viewed the crossings—which they determined were privately owned and maintained—and reported that while both were eroding, the Blackford crossing was stable but the Lemke/Hackbarth crossing was not. Although the appraisers questioned whether the ditch project caused the erosion, they recommended awarding the Blackfords $8000 "to avoid future physical impacts," and $15,500 to the Lemkes and Hackbarths to return their crossing "to its condition after work done in 1983 along with measures to protect it from future damage."

In response, the landowners retained Donald Etler, a drainage engineer, who reported that the construction of the open ditch in 2017 sent "larger and deeper peak flows" downstream to the crossings. He determined that the 48-inch diameter culverts under the crossings were too small to handle the increased water flow from the upstream ditch. Etler recommended installing 84-inch culverts at both crossings, with top widths of about thirty feet. The estimated cost for the Lemke/Hackbarth project was $46,200, while the Blackfords' estimate was $48,200. The landowners asked the board to award them those amounts as damages, plus an additional $6000 for, among other things, "not being able to use the ditch field crossing since 2018." The board denied the landowners' claims, awarding them nothing in damages.

The landowners appealed this decision to the district court under section 468.91. A hearing was held in November 2022, following which the parties submitted briefs for the court's consideration. The landowners' brief generally

argued that their crossings were damaged by the 2017 ditch project, and they were "entitled to again have functional crossings" that could handle the increased water flow from the open ditch upstream. The board's brief asserted that it had a permanent easement for the drainage ditch, which was superior to the landowners' private crossing rights. Because of its easement, the board reasoned that if the crossings obstructed water flow in the ditch, the board could remove them. Therefore, the board maintained that it had no duty to repair either crossing. In the alternative, the board argued the proper measure of damages was "the fair and reasonable cost of the repair or replacement" but that damages should not "exceed the value of the property immediately prior to the loss." Since the landowners did not offer any evidence about the value of their crossings before the 2017 ditch project, the board asserted their damage claims failed. In reply, the landowners argued they had "an easement by necessity and/or implication with their crossings to access their land." And they contended the "measure of damages for injury to real estate is the fair and reasonable cost of restoring the property to the condition before the injury," regardless of its pre-damage value.

The district court ruled for the landowners, finding the "upstream project did increase both the volume and velocity of water at [the] crossings." But, the court continued, the drainage "district failed to consider the result as it relates to the crossings," which the court found were "well established and accepted by the drainage district." So, while the court found the landowners were responsible for maintaining the integrity of the private crossings, "the unreasonable damage to them caused by the district renders it liable for some amount of damages." The court set "damages at the halfway point for repair/improvement of the crossings,"

awarding $27,100 jointly to the Lemkes and Hackbarths and $34,100 to the Blackfords. The court also awarded $6000 jointly to the Lemkes and Hackbarths for "landlocking" and $6000 to the Blackfords for "repair/stabilizing."[3]

The board filed a motion under Iowa Rule of Civil Procedure 1.904(2), asking the court to reconsider the board's easement and damage arguments. The court declined to reconsider the easement issue but granted the board's motion on damages, noting "[i]t failed to recognize that, under Iowa law, there is an 'upper limit to recovery' of replacement or repair damages." Because the landowners "submitted no evidence on the value of the crossings or adjacent property immediately prior to the damage," the court struck its "damage orders for repair/replacement" but left the $6000 damage awards.

The landowners appeal the court's decision, claiming "[t]here is no requirement to submit any proof in regard to the value of their farm lands, or the value of the field crossings." They also claim the board waived any objection to the landowners' failure to offer such proof. The board cross-appeals, maintaining that the "drainage district's easement rights have priority over [the landowners'] private crossing rights," so the landowners are not entitled to any damages. Alternatively, the board claims the court erred in awarding the landowners $6000 in damages for landlocking, repair, and stabilization because "any compensation paid to the [landowners'] predecessors in title are conclusively presumed to include all damages present and future which may be sustained by the owner."

---

[3] This award was made in the court's conclusions of law. But in the decretal portion of its ruling, the court awarded $6000 to the Lemkes and $6000 to the Hackbarths, with no mention of the Blackfords.

## III.    Analysis

Because we find the easement issue is dispositive, we start and end our analysis there.  But first, a history lesson.

The importance of proper drainage for agriculture in Iowa cannot be overstated.  Indeed, it's provided for in our state's constitution.  *See* Iowa Const. art. 1, § 18 (empowering the legislature to "provide for the organization of drainage districts, vest the proper authorities with power to construct and maintain levees, drains and ditches and to keep in repair all drains, ditches, and levees").  As our supreme court explained,

> Due to ancient glacier activity, much of north central and northwest Iowa consists of land that simply does not drain well.  Up until drainage systems were installed, the land was either very wet or consisted of swamps.  In order to transform these lands into the productive farm land that exists today, farmers began tiling their fields to allow subsurface drainage.  As early as the turn of the century, the Iowa legislature recognized that in order to efficiently handle the administration of drainage, a statutory scheme was necessary.  What resulted was Iowa Code chapter 468, entitled Levee and Drainage Districts and Improvements.

*Hardin County Drainage District 55, Div. 3, Lateral 10 v. Union Pacific Railroad Co.*, 826 N.W.2d 507, 508–09 (Iowa 2013).

"The purpose of a drainage district is to build and maintain drainage improvements of agricultural and other lands, thereby making them tillable or suitable for profitable use."  *Union Pacific R.R. Co. v. Drainage Dist. 67 Bd. of Trustees*, 974 N.W.2d 78, 82 (Iowa 2022) (cleaned up).  To facilitate the construction of those improvements, chapter 468 provides an eminent-domain-like procedure by which the board of trustees may acquire drainage right-of-way over private land.  *See Peterson v. Bd. of Trustees of Drainage Dist. No. 5*, 625 N.W.2d

707, 709 (Iowa 2001); *accord Abbas*, ___ N.W.3d at ___, 2025 WL 223427, at *1. At the end of that process, the district is established and is "deemed to have acquired by permanent easement all right-of-way for drainage ditches, tile lines, settling basins and other improvements." *Hicks*, 514 N.W.2d at 440 (quoting Iowa Code § 468.27(2)). While the owner "retains the right to use the property in any way not inconsistent with the carrying out of the plans of the drainage district," this does not mean "that the owner may, in all cases, enter upon the right of way and level the waste banks so as to reclaim the land for cultivation." *Id.* (citation omitted).

With this background in mind, we turn to the board's easement claim. Challenges to board action under chapter 468 are typically tried in equity. Iowa Code § 468.91; *Chi. Cent. & Pac. R.R. Co. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 370 (Iowa 2012) (noting exceptions for when a party appeals the compensation fixed for a taking or the amount of damages awarded for a claim). But because the parties tried this case at law, we agree with them that our review is for correction of errors at law. *Drainage Dist. 55*, 826 N.W.2d at 510 (noting we generally "hear a case on appeal in the same manner in which it was tried in the district court" (citation omitted)); *see also Abbas*, ___ N.W.3d at ___, 2025 WL 223427, at *4 (reviewing for corrections of errors at law where an appeal from the board's damages award was tried to the district court as an ordinary proceeding).

We also agree with the board that it preserved the easement issue for our review. While the issue was not raised by the board until its post-trial brief, the parties agreed to submit their arguments in writing to the court. When the court

failed to address the easement issue in its decision, the board filed its motion under Iowa Rule of Civil Procedure 1.904(2), asking the court for a ruling. Error was accordingly preserved, even though the court summarily denied the board's post-trial motion on that issue. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 70 (2006) ("If the moving party has requested a ruling via a motion under Iowa Rule 1.904(2) or otherwise, and the court refuses to make a ruling, error is preserved."); *accord Madden v. City of Eldridge*, 661 N.W.2d 134, 138 (Iowa 2003).

Turning then to the merits, both sides agree—as they must—that the drainage district has a permanent easement for the drainage ditch across the land owned by the Lemkes, Hackbarths, and Blackfords. *See* Iowa Code § 468.27(2); *Hicks*, 514 N.W.2d at 440–41 (determining Franklin County Drainage District 48 has a permanent drainage easement); *Abbas*, ___ N.W.3d at ___, 2025 WL 223427, at *5–6 (affirming the district court's conclusion that the drainage district "had an existing easement covering the original 1906 open ditch when it reconstructed it in 2017"). But the landowners argue they have "an easement by necessity and by implication for their field crossings over [the district's] open ditch." Neither of these doctrines is applicable because both require "severance of title" between dominant and servient estates. *See Nichols v. City of Evansdale*, 687 N.W.2d 562, 568–69 (Iowa 2004). While the drainage ditch may have physically severed the landowners' property, there has been no severance *of title* since title to the properties has always remained with the landowners. *See Abbas*, ___ N.W.3d at ___, 2025 WL 223427, at *9 ("[N]othing in chapter 468 requires the

landowner to convey the property for which it was compensated to the board."); *see also Hawk v. Rice*, 325 N.W.2d 97, 98 (Iowa 1982) ("An easement is a liberty, privilege or advantage in land without profit, existing distinct from ownership.").

The landowners also argue that the district "cannot remove, nor render the Lemke/Hackbarth or Blackford field crossings unusable by farm equipment caused by it increasing the discharge of water by 325% against those field crossings." Addressing the latter point first, it's true that an "individual landowner draining water on his own land cannot unusually increase the volume thereof onto the servient land, nor can he drain such water in an unusually or materially different way than the same would run." *Bd. of Supervisors of Pottawattamie Cnty. v. Bd. of Supervisors of Harrison Cnty.*, 241 N.W. 14, 22 (Iowa 1932); *accord O'Tool v. Hathaway*, 461 N.W.2d 161, 163 (Iowa 1990) ("We have many times held that if the volume of water is substantially increased . . . and actual damage results, the servient owner is entitled to relief." (citation omitted)).

> But when the individual landowner organizes a drainage district with his neighbors, and there is included in such district the lands of the various members thereof, the collective body, through the drainage district, may unusually increase the volume of the water from the dominant estate inclosed by the district onto the servient estate below, although the single individual of the group draining his own land could not so do.

*Bd. of Supervisors of Pottawattamie Cnty.*, 241 N.W. at 22; *see also Maben v. Olson*, 175 N.W. 512, 514 (Iowa 1919) ("Such acceleration and increased overflow is the cardinal purpose of draining agricultural lands.").

As for the landowners' claim that the board could not remove their crossings, or render them unusable, "[d]rainage districts in Iowa have the statutory duty to repair and maintain drainage systems in their original efficiency or

capacity." *Holler v. Bd. of Supervisors of Pocahontas Cnty.*, 304 N.W.2d 441, 442 (Iowa Ct. App. 1980).  To that end, Iowa Code section 468.126(1)(a) provides:

> The board at any time on its own motion, without notice, may order done whatever is necessary to restore or maintain a drainage or levee improvement in its original efficiency or capacity, and for that purpose may remove silt and debris, repair any damaged structures, remove weeds and other vegetable growth, and whatever else may be needed to restore or maintain such efficiency or capacity or to prolong its useful life.

*See also* Iowa Code § 468.138 ("The board shall cause to be removed from the ditches, drains, and laterals of any district any obstructions which interfere with the flow of water. . . .").  Section 468.27(2) limits the damages that may be awarded to the landowner in the district's performance of this duty: "The owner or lessee shall be reimbursed for any crop damages incurred in the maintenance, repair, improvement, and inspection *except within the right-of-way of the drainage district.*"  (Emphasis added.)

The landowners argue that under section 468.126(1)(a), the board was required to replace their field crossings "with 84-inch diameter culverts to maintain the efficiency and capacity of still being able to handle the discharge of water flow" from upstream.  But their field crossings are not part of the district's drainage system—they are private crossings with culverts the landowners installed.  The landowners cite no authority for the proposition that the district should either pay for an upgrade to their private system or compensate them for the damage they claim resulted from the district's maintenance of the drainage system.  *Holler*, 304 N.W.2d at 442 ("However, we can find no authority for the plaintiffs' contention that injury resulting to a lower landowner from the exercise of this duty should be compensated.").  As we held in *Holler*, "We will not order the drainage district to

compensate the plaintiffs' injury when the district's action was merely taken in compliance with its statutory duty to keep the system in good repair." *Id.* at 443. We accordingly agree with the board that the landowners were not entitled to the damages they requested to "restore their farm lands with reliable functional field crossings" that can handle the increased water flow from the drainage ditch project or for the repair and stabilization of those crossings.

Finally, to the extent the district court awarded the landowners damages for "landlocking," we find those damages are not allowed by Iowa Code section 468.102, which excludes claims "for land taken for right-of-way or for severance of land." As our supreme court has explained, the damages fixed at the time of a drainage district's taking are the final compensation for the burdened landowner, and the board of trustees lacks authority to award "supplemental" damage payments for future injuries within the right-of-way. *Peterson*, 625 N.W.2d at 710–11 (recognizing this "finality requirement . . . may work a hardship in those situations where changes in the water flow produce unanticipated consequential damage to adjoining property owners"). This principle was reaffirmed in *Abbas*, which held:

> When [the district] paid damages to property owners for the original drainage ditch in 1906, the severance damages, i.e., the diminution in value of the adjacent property severed by the open ditch, "are conclusively presumed to include all damages, present and future, which may be sustained by the owner by reason of the proper use of the condemned portion for the purpose for which it is condemned."

___ N.W.3d at ___, 2025 WL 223427, at *7 (citation omitted). In *Abbas*, the court recognized "one caveat" to the finality rule for 4.01 acres of land that— undisputedly—became landlocked for the first time because of the board's 2017

improvements. *Id.* at \_\_\_, 2025 WL 223427, at \*8. But the unique record that made supplemental severance damages appropriate in *Abbas* is not before us in this case. The evidence here showed that the properties owned by the Lemkes and Hackbarths became landlocked when the open ditch was first constructed in 1906. Because the 2017 open ditch project did not cause a new severance of their properties, they were not entitled to the "landlocking" damages that were awarded by the district court.

For these reasons, we reverse the district court's ruling that awarded the landowners damages for the 2017 ditch project undertaken by the board and remand for an order dismissing their petition.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**